488 So.2d 788 (1986)
In the Interest of M.R.L., M.L.L. and V.L.
No. 56591.
Supreme Court of Mississippi.
May 14, 1986.
*789 Larry Buffington, Collins, for appellant.
Francis T. (Tom) Zachary, Jr., Hattiesburg, for appellee.
Before PATTERSON, C.J., ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
We are today presented with the tale of three young children, approaching adolescence, who have somehow missed the maturation process. In response to a series of real or imaginary spooks, these children have not seriously encountered the school house. Because of disabilities, illness and modest financial resources, their parents have provided little in the way of nurture and guidance and preparation for life in the complex, pluralistic society of the near future. Because it had to do something, the Youth Court has placed these children in a church-operated children's home.
It is with great temerity that we approach the authority vested in the youth courts of this state to effect removal of children from the home of their parents. That authority must be exercised always in accordance with principles recognized forty years ago in Reynolds v. Davidow, 200 Miss. 480, 27 So.2d 691 (1946):
In the kaleidoscope of human relationships, the rude and realistic hand of fate jostles the facts and their actors into ever changing patterns, and through its lens the courts view constant rearrangements in designs which never repeat. There is one constant. This is the dominant and natural right of the parent to the custody and care of the child. So long as this right is not forfeited by conduct or conditions which adversely affect the welfare of the child, mere considerations of comparative well being are no concern of the state whose continuing guardianship of its infant wards may supervise but never supercede its natural guardian.
200 Miss. at 484, 27 So.2d at 691-92; see also Adams v. Powe, 469 So.2d 76, 78 (Miss. 1985).
We maintain our vigilence that children may not be stripped from their parents and placed in the custody of the state for deviation from middle class American norms. To the point, we are sensitive to the fact that, under the authority legalistically granted the Youth Court in our Youth Court Act, Tom Sawyer could have been held a child in need of supervision, in which event Muff Potter may have been hanged. Still, we must do what we can.

II.
The three children whose lives we affect this day are (1) M.R.L., a boy, now 14 years of age, his birth date being August 18, 1971; (2) M.L.L., a boy, now 13 years of age, his birth date being July 25, 1972; and (3) V.L., a girl, now 11 years of age, her birth date being August 14, 1974. The middle child, M.L.L., appears the most petulant of the three.
The father of the children is a totally disabled World War II veteran whose sole sources of income are VA and Social Security *790 benefits. Their mother is apparently somewhat younger and has a recent history of mental illness. Except for times when the mother has been hospitalized, the parents of these children have resided together in the Hattiesburg area.
Each child has been the object of a petition filed on December 14, 1984, in the Youth Court of Forrest County seeking to have such child adjudged in need of supervision. Miss. Code Ann. § 43-21-105(k) (Supp. 1985). On May 2, 1986, the Youth Court so adjudged each of these children. Following a dispositional hearing, custody of each child was vested with Baptist Children's Village of Clinton, Mississippi. The parents of the three children now appeal both the adjudication and disposition made on each petition.

III.
The principal question raised and argued on this appeal is whether each of these children is a "child in need of supervision" within the meaning and contemplation of our Youth Court Act. Miss. Code Ann. § 43-21-105(k) (Supp. 1985). The statute defines this status as follows:
(k) "Child in need of supervision" means a child who has reached his seventh birthday and is in need of treatment or rehabilitation because the child:
(i) Is habitually disobedient of reasonable and lawful commands of his parent, guardian or custodian and is ungovernable; or
(ii) While being required to attend school, wilfully and habitually violates the rules thereof or wilfully and habitually absent himself therefrom; or
(iii) Runs away from home without good cause; or
(iv) Has committed a delinquent act.
The Youth Court found each child in need of supervision and ordered placement in the Baptist Children's Village outside of Clinton, Mississippi. The children's parents appeal both the status adjudication and dispositional orders.
In considering Appellants' challenge to the evidentiary sufficiency of the State's case we must keep in mind that a child may be adjudged "a child in need of supervision" only upon proof beyond a reasonable doubt that the child is within the definition quoted above. Miss. Code Ann. § 43-21-561(1) and (2) (1972). We are mildly concerned that the Youth Court in its ruling adjudicating these children in need of supervision makes no reference to the required standard of proof. The Youth Court prosecutor obviously misunderstood the burden, for he argued, by reference to the evidence at trial, that
[there] has been more than a preponderance of the evidence regarding the fact that the children are not supervised  have not been adequately supervised.
Because an adjudication that a child is in need of supervision confers upon the Youth Court the authority to remove him or her from the home of his parents, our law provides the most stringent burden of proof. Apropos in the present context is recent language from the Supreme Court of the United States
The function of any standard of proof is to `instruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication'. In Re Winship, 397 U.S. 358, 370, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlon, J., concurring). By informing the fact finder in this manner, the standard of proof allocates the risk of erroneous judgment between the litigants and indicates the relative importance society attaches to the ultimate decision. [citations omitted]
Colorado v. New Mexico, 467 U.S. 310, 104 S.Ct. 2433, 2438, 81 L.Ed.2d 247, 254 (1984).
The question before us today is whether the State proved that these children were within the statutory definition of "child in need of supervision" within the meaning and contemplation of Section 43-21-105(k)  and whether that proof has been made beyond a reasonable doubt. Of course, in reviewing the evidence we do not proceed de novo. Rather, our scope of review is *791 limited. We consider all of the evidence before the Youth Court in the light most favorable to the State. If the evidence so considered is opposed to the adjudication of the Youth Court with such force that reasonable men could not have found as the Youth Court did beyond a reasonable doubt, we must reverse. See In Interest of K.A.R., 441 So.2d 108, 110 (Miss. 1983). On the other hand, if there is substantial evidence in the record supporting the adjudication of the Youth Court, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, the Youth Court might reasonably have ruled as it did, we must affirm. Cf. In Interest of I.G., 467 So.2d 920, 924 (Miss. 1985).
The core finding of the Youth Court was that
There has been a failure to provide any supervision, care and guidance and protection of these three children, and it has placed these children beyond their ability to cope with their family life.
The Youth Court also described the children as lacking "socialization", as "environmentally deprived", and as unable to interact "with other children". "They have been left on their own."
These findings clearly comport with the requirement of the statute that the children found "in need of treatment of rehabilitation". The findings and evidence do not, however, fit as neatly within the rest of the statute as we would like. For example, the Youth Court predicated its adjudication in part upon the commission by these children of delinquent acts within the contemplation of Section 43-21-105(k)(iv). The evidence here is less than compelling. One child was charged with shoplifting which turned out to be the theft of a Hershey bar. Another was charged with the shoplifting of a $5.97 cassette tape, an offense, to be sure, but for today's ten year old the moral equivalent of the raid on Farmer Jones' watermelon patch in generations past. They were charged with throwing rocks at a neighbor's home. The children said the attack was provoked. Then there is a curious initial allusion to a charge of auto theft which turned out to be nothing more than the three children, with the oldest at the wheel, taking their father's van for an unauthorized spin around the neighborhood. Technically, of course, these may be delinquent acts. Wild exaggeration must be employed to extrapolate from these acts the beyond-a-reasonable-doubt conclusion that these children need "treatment or rehabilitation". Miss. Code Ann. § 43-21-105(k) (Supp. 1985).
Much of the State's evidence regarding the home environment is similarly less than compelling. For one thing, there is no evidence that the children have in any way been physically abused  the one incident where the mother drug one of the children home "by the scruff of the neck" being something that parents have of necessity done from time immemorial. In their attempt to build a case against these children and their parents, the State proved that one child cut his foot and that the cut became infected because of improper medical attention. There were complaints about the children's home not being clean, that their clothes were not neat, that upon one visit a welfare worker observed twenty dirty dishes, a cat in the house and cat food on the floor. The mother was chastised for not cooking her meals and for instead relying heavily on fast food stores. The State's proof dances around the periphery of what is important here.
What comes through this record to us, loud and clear, is the inadequacy of our law to respond effectively to the fact that these children are in serious danger of having three strikes against them before they even begin their adult lives. The situation obviously cries out for a caring response and the Youth Court and welfare officials involved have tried to provide that response  the point of straining to find proofs that might fit within the arbitrary nomenclature of the statute. The other side of the coin  the dangerous side of that there are no doubt thousands of children around this state who could be taken from their homes on proof such as this.
*792 Despite this attention to minutia, we find that the evidence in this case overwhelmingly establishes two core facts about each of these children. Each in educational achievement is light years behind the grade level ordinarily appropriate to his or her chronological age. The children's attendance at school has been erratic, to put it mildly. Moreover, each of these children through the advent of the present proceedings was brought up with practically no guidance or discipline and apparently for years have been allowed to roam the neighborhood and fend for themselves. In any layman's sense of the words, these children are in need of supervision.
That the children habitually disobeyed the reasonable and lawful commands of their parents to go to school brings them within Section 43-21-105(k)(i). Specifically, the children admitted that on a number of occasions they would leave home in the morning telling their father they were going to school and that they would go to the bus stop, and then run and hide in the woods when the bus came. While it appears that their truancy was in part acquiesced in by the parents, the evidence shows without contradiction habitual disobedience of the parents. Indeed, the children admitted as much. There was also evidence that the children were "ungovernable". In a word, there is no evidence that they had ever been governed, hence their ungovernability.
In the final analysis, having in mind our limited scope of review, we have no authority to reverse. There appears in this record substantial evidence supporting beyond-a-reasonable-doubt findings that these children are in need of "treatment or rehabilitation" ("habilitation" would be a better word) because each has been habitually disobedient of reasonable and lawful commands of his or her parents and is ungovernable, [Section 43-21-105(k)(i)]. We further defer to the several opportunities of the Youth Court Judge to see and hear the children and their parents and to observe their temperament, maturity and demeanor. The so-called delinquent acts are at best the icing on the cake.
Much has been said of the fact that these children attended school only infrequently. The parents argue, however, that the children may not be found in need of supervision within Section 43-21-105(k)(ii) which refers to children who
while being required to attend school, wilfully and habitually violates the rules thereof or wilfully and habitually absent themselves therefrom; ... .
Because Mississippi has no compulsory school attendance law applicable to these children,[1] no portion of the adjudication that the children are in need of supervision may rest upon Subsection (k)(ii).

IV.
Appellants assign as error the Youth Court's finding that each of these children is a neglected child. See Miss. Code Ann. § 43-21-105(1) (Supp. 1985). This finding must be reversed. The petitions filed against these three children charge expressly that each is a child in need of supervision. In no way do any of the petitions charge that the children are neglected children. None of the petitions was ever so amended. In final argument at the adjudicatory hearing, the Youth Court prosecutor expressly advised the court that the State "opted to travel on a lack of supervision ... instead of opting to amend the petition as to neglect or emotional neglect of these children". While concededly there is evidence that would support a finding of neglect, regularity in judicial proceedings forbids the Youth Court making such a determination in this a case in which the record fails to suggest that anyone even considered the neglected child issue until all of the proceedings at the adjudicatory hearing had been concluded and the Youth Court was announcing its decision.
*793 We can only speculate that the Youth Court may have found the children neglected out of a recognition that a bit of straining is necessary to bring the case within "child in need of supervision". Furthermore, proof by a preponderance of the evidence is all that is necessary to find that a child is a neglected child. Miss. Code Ann. § 43-21-561(3) (1972); In Interest of I.G., 467 So.2d 920, 924 (Miss. 1985). No doubt the Youth Court recognized that something had to be done for these children and that on the evidence the chances of that something being provided in the home was next to nonexistent. Whatever its motives, the Youth Court exceeded its authority in finding the children neglected children, given the present petition and record.

V.
Finally, Appellants challenge the Youth Court's dispositional order: placement of the children in the Baptist Children's Village near Clinton, Mississippi. These children having been found in need of supervision, the Youth Court was vested by law with broad dispositional discretion, to be exercised in the best interests of the children. Miss. Code Ann. § 43-21-607 (1972).
At the heart of this assignment is the Court's removal of the children from the home of their parents  over the expressed protest of all three children and each of their parents. Matters are complicated in that we obviously have here caring parents who genuinely want to do well by their children but who, each for his or her own reasons, apparently cannot cope. Sensitive that it is presumptuous for the State ever to say it can raise children better than their parents, we are overwhelmed by this record establishing as it does the crying needs of these children for the opportunity to mature in an environment containing some structure and somehow to get their educational pursuits back on track.
For better or for worse, programs and facilities realistically designed and maintained to benefit children such as these are few and far between. The Youth Court possesses no magic wand. It considered the alternatives available, in Hattiesburg and elsewhere, and determined that the best interests of these children required placement in the Baptist Children's Village, a facility the Youth Court Judge had visited and with which he was personally familiar. That determination was within the Youth Court's authority. Miss. Code Ann. § 43-21-607(f)(ii) (1972). The dispositional order must be affirmed.
As a postscript, we emphasize that order such as this are by their nature less than permanent. To provide these children with educational and socialization opportunities, it has been necessary to deprive them of the daily love and affection of their parents. Orders such as those affirmed here are little more than the beginning of the responsibility of our juvenile justice system, for from the moment of their entry the officials of the system became charged to move heaven and earth to the end that the best interests of these children may soon be to return them to their parents and their home.
AFFIRMED IN PART; REVERSED IN PART.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Because each of these children was over eight years old at the beginning of the 1983-84 school year, our compulsory school attendance law does not affect them. Miss. Code Ann. § 37-13-91(1)(f) (Supp. 1985).