527 So.2d 632 (1988)
Bobby McGORY and Dorothy McGory
v.
ALLSTATE INSURANCE COMPANY.
No. 57650.
Supreme Court of Mississippi.
May 4, 1988.
Rehearing Denied July 13, 1988.
*633 Jim Waide, Tupelo, for appellant.
Lynn Brumfield, McCoy, Wilkins, Noblin & Stephens, Jackson, for appellee.
Michael D. Greer, W. Scott Collins, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Guy T. Gillespie, III, Robert H. Faulks, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, James L. Carroll, Richard T. Lawrence, Robert A. Miller, Watkins & Eager, Mark Haire, Arthur F. Jernigan, Jr., Phelps, Dunbar, Marks, Claverie & Sims, Jackson, for amicus curiae.
Before DAN M. LEE, P.J., and ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the court:

I.
This is a fraud by civil arson case. The jury found for the insurer, and judgment has been entered voiding coverage on the insureds' rental property. The case must be reversed, however, because the trial court failed to require that the insurer prove the insureds' arson by clear and convincing evidence, opting instead for the lesser by-a-preponderance-of-the-evidence standard. We remand for a new trial.

II.

A.
In 1981, Bobby and Dorothy McGory bought from one Steven Hudson a house on Highway 6 in Nettleton, Mississippi. Dorothy McGory took title to the property in her name. The McGorys promised to pay Hudson $45,000.00, a promise secured by a deed of trust on the house. Unbeknownst to the McGorys, at the time of sale, the house was encumbered by a mortgage held by the Bank of Mississippi. The McGorys also bought a barbecue restaurant located right next door to the Nettleton house.
The McGorys, jointly, purchased fire insurance on this property from Allstate Insurance Company, with coverage from May 12, 1983, through May 12, 1984. The house was insured for $60,000.00; its contents for $10,000.00. The policy listed only the Bank of Mississippi as a mortgagee and indicated that the house would be occupied by one family. In fact, both Hudson and the bank held mortgages, and the McGorys did not live in the house, but rented the downstairs to two single tenants and the upstairs to a family. The McGorys lived in nearby Okolona, Mississippi.
The McGorys substantially repaired the house. They fixed the plumbing and wiring, leveled the wood floors, replaced the windows, hung chandelier fixtures, installed wall-to-wall carpeting and all new furnishings and painted. On March 21, 1984, the house was substantially damaged by fire. The fire was noticed at approximately 3:00 p.m. Uncontradicted proof established that: On the day of the fire, Dorothy was busy working in the next door restaurant and did not approach the house until the fire broke out; Bobby was in Okolona and was not seen in Nettleton near the burning house, until approximately 3:40 p.m.; and, the McGorys' three children were in school until 2:30 p.m. when they joined their mother at the barbecue restaurant.
Two Nettleton volunteer firemen and an arson expert testified that the fire was incendiary (deliberate) in nature and had multiple origins. The arson expert was of the opinion, based on the pattern of the fire, that accelerants had been used to start it. One of the firemen and the arson expert stated positively that the fire could not have been started by children playing with matches. A fourth witness, a Mississippi fire marshall, indicated that there was one *634 primary origin and two "most likely" other origins and agreed that the fire was consistent with incendiarism.
At the time of the fire, Bobby owed a Nettleton furniture dealer $42,000.00. In addition, a collection agency had been employed to collect a total of $7618.27 from Bobby. In the few months before the fire, the McGorys had allowed all of their insurance policies, including the one on their primary home in Okolona, to lapse. The McGorys' insurance agent stated that the McGorys had on several occasions inquired about increasing the coverage on the Nettleton house. He stated further that not too long before the fire he had decided to cancel the policy covering the house and that the McGorys knew this. On the day of the fire, Bobby called him to ask whether the Nettleton house was still covered under the policy.
The McGorys stated that they once inquired about increased coverage in response to a notice sent out by Allstate encouraging them to do so. They also claimed not to have known, prior to the fire, that the policy was being cancelled. In fact, they did not receive written notice of cancellation until April 2, 1984, which was twelve days after the fire.

B.
Allstate Insurance Company commenced this civil action by filing in the Chancery Court of Lee County, Mississippi, its complaint for declaratory judgment. See Rule 57, Miss.R.Civ.P. Allstate named as Defendants Bobby and Dorothy McGory and as well G.J. Gravlee d/b/a Gravlee Lumber Company, Nettleton Building Supply Corp. and Steve Hudson, each of whom was and is a creditor of the McGorys. The complaint alleged that Allstate had issued a policy of insurance covering certain property located in Nettleton effective May 12, 1983, to May 12, 1984, and sought a declaration, inter alia, that it had no responsibility under the policy by reason the fact that the fire was of incendiary origins attributable to the McGorys.
The McGorys answered admitting the insurance policy but denying any responsibility for the fire. Moreover, the McGorys filed a counterclaim against Allstate asserting a loss within the coverage of the policy and demanding payment from Allstate.
In due course, the matter was transferred to the Circuit Court of Lee County whereupon trial commenced on November 5, 1985, before the Circuit Court sitting with a civil jury. On November 6, 1985, the jury returned a verdict for Allstate, nine jurors voting for the verdict and three voting against it. See Rule 48(a), Miss.R. Civ.P.
The McGorys then timely filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. On February 21, 1986, the Circuit Court entered its order overruling both motions. The McGorys now prosecute an appeal to this Court.

III.

A.
The McGorys first argue that the Circuit Court erred in denying their motion for judgment notwithstanding the verdict. Conceding that the fire was of incendiary origins, the McGorys point, simply put, is that Allstate failed to prove that either of them lit the match.
Under Mississippi law, wilful incendiarism by an insured is a defense to the insurer's liability. Davidson v. State Farm Fire & Cas. Co., 641 F. Supp. 503, 507 (N.D.Miss. 1986); Sullivan v. American Motorist Ins. Co., 605 F.2d 169, 170 (5th Cir.1979) citing Williams v. Cambridge Mut. Fire Ins. Co., 230 F.2d 293, 294 (5th Cir.1956); and Brower v. State, 217 Miss. 425, 431-32, 64 So.2d 576, 579 (1953). This is true even if the insurance policy does not expressly exclude coverage for wilful burning. Davidson, 641 F. Supp. at 507; Sullivan, 605 F.2d at 170.
Arson like adultery is seldom seen, and our law allows that it be proved circumstantially. Recurrent in the cases are three elements of the circumstantial claim, to-wit: (1) an incendiary fire; (2) motive of the insured to destroy the property; (3) *635 evidence that the insured had the opportunity to set the fire or to procure its being set by another. See Davidson v. State Farm Fire & Casualty Co., 641 F. Supp. 503, 507 (N.D.Miss. 1986); Vicksburg Furniture Mfg., Ltd. v. Aetna Cas. and Surety Company, 625 F.2d 1167, 1171-72 (5th Cir.1980); Burress v. Standard Fire Insurance Co., 642 F. Supp. 62, 66-67 (N.D. Miss. 1986); and Gardner v. Wilkinson, 643 F.2d 1135, 1136 (5th Cir.1981). See also Arms v. State Farm Fire & Casualty Co., 731 F.2d 1245, 1249 (6th Cir.1984); Don Burton, Inc. v. Aetna Life & Casualty Co., 575 F.2d 702, 707 (9th Cir.1978); Mele v. All-Star Ins. Corp., 453 F. Supp. 1338, 1341 (E.D.Penn. 1978); Godwin v. Farmers Ins. Co. of America, 129 Ariz. 416, 631 P.2d 571, 574 (App. 1981). We accept these as a part of our positive law.

B.
The standards we employ in reviewing a trial court's refusal to grant judgment notwithstanding the verdict are familiar. See, e.g., Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1985); City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss. 1983); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975). Those need not be repeated here. Suffice it to say that these standards apply to each element of a claim or defense.
Before considering the sufficiency of the evidence, however, we must consider the burden  and quantum  of proof required of the insurer. Indeed, by a separate assignment of error, the McGorys raise quite seriously the question of the burden of proof.
To begin with, the burden rests upon an insurer claiming civil arson to prove it, and this is so whether it be asserted defensively in an action by the insured on a policy or, as here, in an action by the insurer for declaratory judgment. But what is the quantum of proof an insurer must offer to establish the policy avoidance defense of civil arson?
Many cases in other jurisdictions have held that the insurer's burden is the conventional "by a preponderance of the evidence" burden. See Davidson v. State Farm, 641 F. Supp. 503, 507 (N.D.Miss. 1986); Burress v. Standard Fire Insurance Co., 642 F. Supp. 62, 67 (N.D.Miss. 1986); Vicksburg Furniture Mfg. Ltd. v. Aetna Cas. and Surety Co., 625 F.2d 1167, 1169-70 (5th Cir.1980); Neises v. Solomon State Bank, 236 Kan. 767, 696 P.2d 372, 378 (1985). We have never passed upon the point.
Civil arson seems very much like fraud. And as all know, Mississippi law requires that a party charging fraud prove his charge by clear and convincing evidence. See, e.g., Beck Enterprises, Inc. v. Hester, 512 So.2d 672, 675 (Miss. 1987); Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 420 (Miss. 1987); Johnson v. Brewer, 427 So.2d 118, 126 (Miss. 1983).
Stewart v. Domestic Loans of Brookhaven, Inc., 199 So.2d 444 (Miss. 1967), has force. In Stewart, this Court held that "where a claim is made upon allegations amounting to a charge of fraud or embezzlement, proof to establish it must be clear and convincing before recovery may be allowed. [citations omitted]" Stewart, 199 So.2d at 445. Civil arson against an insurer, like embezzlement, is an act of fraud.
The nature of the charge Allstate is leveling against the McGorys is that they have engaged in an attempt to defraud Allstate. Though this is not precisely the type of fraud contemplated by Johnson v. Brewer and the other cases cited above, we know of no principled basis upon which it might be distinguished. Quantum of proof standards reflect the degree of confidence we demand for particular findings. They measure our willingness to risk error. See Norris v. Norris, 498 So.2d 809, 813 (Miss. 1986); In Interest of M.R.L., 488 So.2d 788, 790 (Miss. 1986). The nature and consequences of the charge of fraud are such that we demand proof by clear and convincing evidence, and for good and apparent reason. No reason has been suggested why fraud by arson might be established by a lesser quantum of evidence, and no reason appears.
*636 More precisely, assuming that our law for good reason requires that fraud generally be proved by clear and convincing evidence, no reason has been suggested why fraud by arson might be proved by a lesser quantum of evidence, certainly no reason appears to us upon reflection. When we add Stewart's holding that the charge of fraud by embezzlement must be proved by clear and convincing evidence, the point is made. Accepting the lesser preponderance standard would only import an arbitrary distinction into our law, one devoid of principled justification.
We hold that when an insurer seeks to avoid coverage under a fire insurance policy charging that the insured has been guilty of civil arson, the insurer must prove each element of its claim by clear and convincing evidence.
In passing upon a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, the trial court must keep in mind the burden and quantum of proof required by law on the outcome determinative substantive issue. Where  as here  the appellee is saddled with a clear and convincing evidence burden at trial, the appellant necessarily has a lower hill to climb on appeal, as we look at all of the evidence and decide whether a rational trier of the fact may have found the elements of civil arson by clear and convincing evidence. Put otherwise, the minimum evidentiary offering from the heavily burdened appellee necessary for affirmance is greater than it would be if the preponderance of the evidence rule applied. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss. 1987); cf. Haygood v. First National Bank of New Albany, 517 So.2d 553, 555-56 (Miss. 1987).

C.
The above standards well in mind, we proceed to the proof. Without question the evidence was legally sufficient on the issue of incendiarism. Arson investigations expert James Vickers, Michael Ivy of the Insurance Division of the State Fire Marshall's Office, and local volunteer firemen Jerry Rakestraw and Billy Pender each explained how and why in their opinion the fire had been deliberately set. But this in and of itself profits Allstate nothing. One of the risks a home owner insures against is that someone else may burn his house down.
Evidence of motive was similarly well established. Without serious doubt Bobby McGory had long overdue debts of approximately $50,000.00, some of which had been turned over for collection. This not only afforded McGory a financial incentive to burn the house and seek the insurance proceeds, the incentive applied to Dorothy McGory as well, notwithstanding Appellants' fervent argument to the contrary. That our law recognizes separate identities of husband and wife has not yet reached the point where we ignore the propensity of one spouse to partake of a fraudulent scheme to help the other out of serious financial difficulties. Yet again, proof of motive standing alone is not sufficient to uphold this verdict. The gleam in the eye is not yet grounds for divorce.
The case turns on opportunity. The record contains not the slightest innuendo that the McGorys hired the house burned. Our focus is upon whether they or either of them burned it. Here Allstate is faced with all but airtight alibis by the McGorys.
Bobby McGory was in Okolona when the fire started. He had been with Sam Davis since approximately 4:00 a.m. that day. McGory and Davis were buying meat and fish for purposes of resale at fish markets in other cities. The two were at Davis' house when the fire started, and Davis was present when McGory received a telephone call and was told about the fire. We divine no factual scenario under which Bobby McGory might have torched his own tenant house.
Dorothy McGory's alibi requires a little more scrutiny, for she was concededly next door in the barbecue restaurant when the fire broke out. The testimony of her tenant, Sonny Wade Williams, strongly supports the conclusion that Dorothy could not have set the fire. Williams, an elderly World War II veteran, was seated in his car outside at the time the fire broke out. *637 He had been sitting there for approximately an hour and a half and said he was in a position to see the house more or less at all times. When he saw the fire begin, he ran into the restaurant to tell Dorothy McGory. He saw Dorothy and Velda Brown run from the restaurant into the burning house. They were engulfed by smoke and forced to leave.
Velda Brown, another tenant of the McGorys, testified that she was in the barbecue restaurant with Dorothy McGory at the time of the fire. Brown said that when Wade Williams warned that the fire was breaking out, she fled back into the house, because she believed that her children were in the home. She said that her entry into the home was frustrated when she became overcome by smoke. Her fears about her children proved unfounded. These children were soon located outside of the burning house.
Josephine Dawson, and Sevantis McGory, minor children of the McGorys, testified they were present in the barbecue restaurant with their mother, Dorothy McGory, when the fire began. They corroborated the testimony of Sonny Wade Williams and Velda Brown, to the effect that Dorothy McGory was cooking in the barbecue restaurant when the fire began and could not possibly have started the fire. These children also confirmed that their father (Bobby McGory) was not present when the fire started. All of which brings the mechanical jurisprude quite close to sustaining the McGorys' point.

D.
Having in mind all of the foregoing  the substantive elements of the defense of civil arson, the burden of proof upon an insurer asserting such, and necessary limitations upon our scope of review of evidentiary questions where the constitutional right of trial by jury has been invoked, and as well the facts of this case, we confront the question whether the McGorys were entitled  at least on liability  to judgment in their favor and against Allstate notwithstanding the verdict of the jury. Though the question of evidentiary sufficiency is one of law, we have yet to devise a mathematical formula for its precise application in specific cases. Discretion and judgment are the hallmark of the judicial function, though facially and formalistically denied. Today's case is no different. In one sense Allstate's proof on the opportunity issue fails as a matter of law. Yet Allstate's proof on incendiarism and motive is quite substantial and has a force we find it difficult to ignore.
Recognizing that we are faced with a judgment call the correctness of which may never be established, we do not believe it may be said in candor on this proof, considering the totality of the facts and circumstances, that no hypothetical reasonable juror could have found that the McGorys engaged in fraud by arson, even considering the burden of proof discussed above. Accordingly, we hold that the Circuit Court correctly denied the McGorys' motion for judgment notwithstanding the verdict.

IV.
Turning to the assignment that the Circuit Court abused its discretion when it refused to grant the McGorys a new trial, we confront different matters. As all know, the grant or denial of a motion for a new trial is a matter committed to the sound discretion of the trial court. We reverse only where there has been an abuse of that discretion. Here we enter the world of evidentiary weight rather than sufficiency. For we may not hold that a trial court has abused its discretion in refusing to grant a new trial unless it appear that the verdict is contrary to the weight of the evidence, and clearly so. See Investors Property Management, Ltd. v. Watkins, Pitts, Hill & Associates, 511 So.2d 1379, 1381 (Miss. 1987); Clark v. Columbus & Greenville Railway Co., 473 So.2d 947, 950 (Miss. 1985).
Fortunately we need not pursue this elusive issue. There is a more solid predicate for our reversing the judgment of the Circuit Court and ordering a new trial. We refer here to the McGorys' request that the jury be instructed that Allstate had the burden of proving fraud by arson by clear *638 and convincing evidence. The McGorys requested Instruction DM-1A which reads:
This case includes a claim by Allstate Insurance Company that the insureds, Bobby McGory and Dorothy McGory, are guilty of fraud by committing arson.
Where one party claims fraud, the burden of proof is on that party to prove this fraud by clear and convincing evidence. That is to say, before you can find that the insurance policy was voided because of "fraud" by Bobby McGory and Dorothy McGory, you must find that the insurance company has proved this fraud by clear and convincing evidence.
The Circuit Court refused this instruction and, instead, instructed the jury that Allstate's burden was by a preponderance of the evidence. See Jury Instruction Nos. P-4, and P-5, to each of which the McGorys timely objected.
We have explained above that an insurer seeking to avoid coverage and payment of a claim under a fire and hazard insurance policy by virtue of the defense of fraud by arson must prove its defense by clear and convincing evidence. As the jury was incorrectly instructed regarding the quantum of proof Allstate had to offer to carry the day, we reverse and remand for a new trial.

V.
Since the case must be retried, several other assignments of error ought be addressed, to the end that the risk of error on remand be minimized. For one, the McGorys urge that the Circuit Court erred in granting contradictory instructions on the question of whether the fraud of one co-insured could be imputed to the other. The point arises in the context of Instructions P-4[1] and DM-5A[2], each of which was submitted to the jury.
Courts of other jurisdictions have held that, absent insurance policy clauses excluding coverage to both co-insureds because of the deliberate wrongful act of one co-insured (non-severability clauses), the innocent spouse or business partner insured can recover on the policy. See Hosey v. Seibels Bruce Group, S.C. Ins. Co., 363 So.2d 751 (Ala. 1978); West Bend Mut. Ins. Co. v. Salemi, 158 Ill. App.3d 241, 110 Ill. Dec. 608, 511 N.E.2d 785 (1987); Carroll v. Statesman Ins. Co., 509 N.E.2d 825 (Ind. 1987); Northwestern Nat. Ins. Co. v. Nemetz, 135 Wis.2d 245, 400 N.W.2d 33 (Wis. App. 1986); Samhammer v. Home Mut. Ins. Co., 120 A.D.2d 59, 507 N.Y.S.2d 499 (1986); Nationwide Mut. Fire Ins. Co. v. Pittman, 82 N.C. App. 756, 348 S.E.2d 350 (1986); Kulubis v. Texas Farm Bureau Underwriters Ins. Co., 706 S.W.2d 953 (Tex. 1986); McCracken v. GEICO, 325 S.E.2d 62 (S.C. 1985); and Annot. Right Of Innocent Insured To Recover Under Fire Policy Covering Property Intentionally Burned By Another Insured, 11 A.L.R.4th 1228 (1982 and Supp. 1987). We agree.
With this starting point, it becomes clear that neither Instruction P-4 nor Instruction DM-5A is adequate. Furthermore, the instructions read together do not properly instruct the jury on the law. *639 First, P-4 allows the jury to find either Bobby or Dorothy guilty of civil arson simply by virtue of the other's guilt. Second, neither Instruction P-4 nor Instruction DM-5A instructs the jury that Allstate had the burden of proving that, either (1) both Bobby and Dorothy cause the fire, that is to say actually burned it together or procured someone to burn it for them, or (2) Dorothy burned the house or caused it to be burned and Bobby knew of Dorothy's act or consented to her act or ratified her act or vice versa. Finally, and tangentially, Instruction DM-5A is inadequate because it fails to provide for the possibility of a jury determination that Bobby and Dorothy hired or otherwise procured someone else to burn their house. We trust these instructional deficiencies will receive attention on remand.

VI.
The McGorys assign as error the Circuit Court's denial of their instruction DM-23.[3] This, in effect, is a civil version of the so-called circumstantial evidence instruction used in criminal cases. See, e.g., Montgomery v. State, 515 So.2d 845, 848 (Miss. 1987). We think the clear and convincing evidence instruction we have approved above will be more than adequate to communicate to the jury the quantum of proof demanded of an insurer in the context of a case such as this. The Circuit Court correctly refused the McGorys' proposed Instruction DM-23.

VII.
There are several other assignments of error regarding instructions, but we believe the answers thereto are adequately given in what has been said above. Moreover, we see no need to address the McGorys' several assignments of error regarding points of evidence. This case was tried on November 5 and 6, 1985, prior to the January 1, 1986, effective date of the Mississippi Rules of Evidence. Retrial will necessarily take place subject to the Mississippi Rules of Evidence. Accordingly, no useful purpose will be served by our addressing these points of evidence under rules which will have no application at the new trial.

VIII.
There is a final point to which we should speak. Gravlee Lumber Company and Steve Hudson were made parties to this suit because they had interests in the insured property. By agreement of all parties to the lawsuit, Gravlee and Hudson did not defend their claims, relying on the McGorys' promise to pay them in the amount of their respective interests should the McGorys succeed on their counterclaim for payment under the fire policy.
In the McGorys' deed of trust executed in favor of Hudson on the Nettleton house, the McGorys promised to keep the premises insured for Hudson's benefit. Hudson was not listed as a mortgagee on the Allstate policy. Miss. Code Ann. § 83-13-7 (1972) which is identical to former Section 5694, Miss.Code of 1942 Ann., provides:
When, by an agreement with the assured or by the terms of a fire insurance policy taken out by a mortgagor, the whole or any part of the loss thereon is payable to the mortgagee or mortgagees of the property for their benefit, the company shall, upon satisfactory proof of the rights and title of the parties, in accordance with such terms and agreement, pay all mortgagees protected by such policy in the order of their priority of claim, as their claims shall appear, not beyond the amount of which the company is liable. Such payments shall be, to the extent thereof, payments and satisfaction of the liabilities of the company under such policy.
Miss. Code Ann. § 83-13-9 (1972), which is identical to former Section 5695, Miss.Code of 1942 Ann., in part provides:
Each fire insurance policy on buildings taken out by a mortgagor or grantor in a *640 deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz:
Loss or damage, if any, under this policy, shall be payable to (here insert the name of the party), as ____ mortgagee (or trustee), as ____ interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, ... whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principle due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of ____ claim.
In Great American Ins. Co. v. Smith, 252 Miss. 62, 172 So.2d 558, 599 (1965), this Court held that, by the language of Section 5695 [§ 83-13-9], where the insurer is not liable to the insured mortgagor but nevertheless pays a mortgagee, the insurer is subrogated to all rights of the mortgagee. Our question is whether this rule applies where the mortgagee is not listed in the policy.
In Employers Mut. Cas. Co. v. Standard Drug Co., 234 So.2d 330 (Miss. 1970), this Court, relying on Lititz Mut. Ins. Co. v. Miller, 210 Miss. 548, 50 So.2d 221, 225 (1951), stated that under Sections 83-13-7 and 83-13-9
The law will presume that fire insurance taken out by a mortgagor in his name, after agreement by him with the mortgagee to insure for the mortgagee's benefit, was taken out to fulfill that agreement.
Employers Mutual confronted a situation where, by agreement in a deed of trust, the mortgagor promised to insure the building for the benefit of a second mortgagee, but failed to include the second mortgagee in the loss payable clause. The second mortgagee, however, notified the insurer of its equitable interest. The court held that the insurer would be held liable to the second mortgagee where it ignored the notice and settled with the mortgagors and the listed first mortgagee only.
The Court of Appeals in reaching its decision in Nationwide Mut. Fire Ins. Co. v. Dungan, noted that:
In Employers' Mutual, unlike the instant case, there were no defenses asserted against the mortgagor, consequently, the court did not have to address the applicability of Section 83-13-9 to unnamed mortgagees since Standard Drug could recover on an equitable lien theory. An equitable lien would only put an unnamed mortgagee ... in the same position as [the insured mortgagors].
Dungan, 818 F.2d at 1245. We consider that Nationwide Mut. Fire Ins. Co. v. Dungan, 818 F.2d 1239 (5th Cir.1987), correctly states the law. As such, judgment was properly entered against Hudson. Hudson's lien remains on the house, therefore, the McGorys had standing to raise this issue.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] P-4
The Court instructs the jury that under Mississippi law if an insured intentionally caused the burning of his insured property he may not recovery the proceeds of any insurance policy insuring said property against fire loss; and if you find from a preponderance of the evidence (1) that the fire which destroyed the subject premises was of incendiary origin; (2) that Bobby and/or Dorothy McGory had sufficient motive to cause the wilful burning of said property; and, (3) that Bobby and/or Dorothy McGory had sufficient opportunity to cause the burning of said property, and if you are satisfied by a preponderance of the evidence that the McGorys or either of them did wilfully cause the destruction of said property by fire, then it would be your sworn duty to return a verdict for Allstate Insurance Company on both the declaratory judgment action of Allstate Ins. Co. and the counterclaim of the McGorys.
[2] DM-5A
There are two separate insureds under the policy of insurance involved in this case. These insureds are Bobby McGory and Dorothy McGory. It is your duty to consider the insurance company's claims against each of these persons separately. That is to say, that if you found that the insurance company has proved that one of the insureds was guilty of burning the home, this would not entitle you to find against the other insured, unless you found that he or she was also guilty of burning the house.
[3] I charge you that the insurance company's claim that the McGorys burned the house is based entirely on circumstantial evidence. You may not find for the McGory's based on such circumstantial evidence it excludes every other reasonable hypothesis except that the McGorys procured the burning of the house.