FAIR, J.,
for the Court:
¶ 1. This case began with allegations of a boy sexually abusing his younger brother. The mother, Sharon Smith,[1] appeals the Coahoma County Youth Court’s judgment granting legal and physical custody of her son to his great aunt. Sharon claims the judge erred in adjudicating Joey a neglected child and ignored medical evidence and testimony in support of reunification. She further claims Joey’s guardian ad litem (GAL) acted adversely to Joey’s best interest. We find the evidence was sufficient to support the youth court’s determination and therefore affirm.
FACTS
¶ 2. In March 2012, the Department of Human Services (DHS) received a call from one of Joey’s family members stating that Joey, four years old, was being sexually abused by his eleven-year-old brother. DHS created an initial safety plan (ISP) on March 22, 2012. As part of the ISP, Joey and his brother were not allowed to be *562 alone unsupervised. Joey was not allowed to stay at home overnight. In addition, the family agreed to go to counseling. The ISP was set to remain in effect until it was confirmed that there were no risk factors regarding Joey’s safety in - the home.
¶ 3. On April 23, 2012, DHS received a phone call from Joey’s doctor at the local children’s clinic. The doctor stated that Joey’s family called her claiming Joey was being sexually abused. DHS spoke with Joey’s grandmother, who stated that the incident occurred on April 19, 2012. She also stated that Sharon had violated the ISP by keeping Joey overnight. DHS filed an emergency custody order with the Coahoma County Youth Court. The court granted the order, awarding DHS physical and legal custody of Joey. On April 27, 2012, the court held a shelter hearing and ordered Joey to remain in DHS custody. Joey was placed with his great-aunt, Mary Jo. DHS maintained custody, and Mary Jo’s home served as the resource home.
¶ 4. On May 9, 2012, DHS filed a petition to adjudicate Joey as a sexually abused child. The court held an adjudication/disposition hearing eight days later. The court appointed Joey a GAL and an attorney, pursuant to Mississippi Code Annotated sections 43-21-121(1) and 43-21-201(1) (Rev. 2009). The only medical report prior to the adjudication hearing was made on May 10, 2012. Several family members testified at the hearing. Two of Joey’s aunts testified that Joey had stated that his brother “sucked his wee-wee.” Joey’s grandmother testified that Joey previously made similar comments to her about sexual activity with his brother. The hearing was continued pending testimony from Joey’s sister and a forensic report.
¶ 5. Several weeks later, the court heard testimony from Joey’s older sister. She testified that she saw her brother performing oral sex on Joey. She also stated that Joey’s mother was aware of the sexual abuse.[2] DHS Family Protection Specialist Shimeka Jackson testified regarding the medical report from May 10, 2012, and a forensic-interview report from May 21, 2012. In the report from May 10, the forensic nurse stated she found no evidence of injuries to Joey. The nurse also stated that another report had been generated one year ago, but that the safety plan included in that report was not followed. The May 21 report was a forensic interview conducted in Oxford, Mississippi; the findings neither confirmed nor rejected the possibility of sexual abuse. DHS recommended Joey remain in its custody. The court adjudicated Joey a neglected child. The disposition order kept Joey in DHS custody and stated that reasonable efforts should be made towards reunification.
¶ 6. On September 20, 2012, one of Joey’s aunts filed a motion to intervene and transfer the case to chancery court. The court heard the motion on November 29, 2012. At the hearing, the aunt’s attorney stated that her client filed a petition for custody in chancery court and needed access to DHS records. The court later denied the aunt’s motion to intervene and transfer, along with the aunt’s request to access DHS records.
¶ 7. The court held a permanency hearing on March 7, 2013. The court reviewed the two reports from May 2012, in addition to several new reports. The court reviewed a medical report from August 26, *563 2012, that could neither confirm nor negate evidence of sexual abuse. On June 12, 2012, Katheryn Teague of the DeSoto Family Counseling Center conducted intake on Joey. Teague stated in her report that Sharon confirmed Joey’s brother had been exposed to pornography. She attributed the older brother’s early exposure to pornography as the cause of any alleged sexual offending behavior. Teague further stated that successful completion of an offender-specific program would lower the risk of future harm to Joey, and that the court should order Joey’s brother to complete an offender-specific program designed for children.
¶ 8. Teague met with Joey at least three more times, most recently a few days before the permanency hearing. Teague provided the court with a treatment summary, stating that Joey exhibited signs of a child who was not nurtured by a primary caregiver. During one of the therapy sessions, Joey told Teague that his brother “sucked my penis” five times. In her final recommendation, Teague stated that “the evaluation of the brother’s psy-chosexual [should] be taken into consideration in regard to his risk to re-offend before making a decision about reunification of the family.” She further stated that, “[i]f the brother is determined to be at risk for offending behavior, the therapist would not recommend placing [Joey] in the home unless the brother was first removed from the home.”
¶ 9. The DHS area social work supervisor recommended that Joey live with his mother for a ninety-day trial placement, based on the fact there was no documented proof of sexual abuse. Joey’s attorney agreed with DHS’s recommendation. The GAL, however, recommended that Joey remain in DHS custody, with continued visitation between Joey and Sharon. In its permanency order, the court detailed the failed efforts of DHS’s permanency plan for reunification. Sharon failed to complete several ISPs. In addition, the court referred to the court summary from the adjudication hearing, where DHS agreed that Joey would not be returned home until a therapist could confirm no risk factors were present. Finding no such confirmation in the record, the court awarded full legal and physical custody of Joey to Mary Jo. The court stated that it would retain jurisdiction for any further actions regarding Joey and released DHS from any monitoring responsibilities.. Sharon appealed.
DISCUSSION
¶ 10. Sharon’s parental rights were not terminated in this action. Therefore, we are directed to apply a reasonableness review, not the elevated review required when a parent’s rights are terminated. See In re C.R., 604 So.2d 1079, 1083 (Miss.1992). Our standard of review in youth court actions is limited:
The trier of fact at a Youth Court hearing is the Youth Court judge. When reviewing the evidence, we do not proceed de novo. Rather, when the Youth Court makes an adjudication of neglect, this Court considers all the evidence considered by the Youth Court in the light most favorable to the State. If the evidence so considered is opposed to the finding of the Youth Court with such force that reasonable men could not have found as the Youth Court did by a preponderance of the evidence, this Court must reverse. However, if there is substantial evidence in the record supporting the adjudication of the Youth Court, evidence of such quality and weight that, even under the “beyond a reasonable doubt” standard, the Youth Court might reasonably have ruled as it did, we must affirm.
*564 In re D.O., 798 So.2d 417, 421 (¶ 13) (Miss. 2001) (internal citations omitted).
1. Adjudication of Neglect
¶ 11. Sharon claims there was insufficient evidence to adjudicate Joey as a neglected child. Mississippi Code Annotated section 43-21-561(3) (Supp.2014), states that “[i]f the court finds from a preponderance, of the evidence that the child is a neglected child, ... the youth court shall enter an order adjudicating the child to be a neglected child....”
¶ 12. Section 43 — 21—105(í) defines a neglected child as one:
(i) Whose parent, guardian or custodian or any person responsible for his care or support, neglects or refuses, when able so to do, to provide for him proper and necessary care or support, or education as required by law, or medical, surgical, or other care necessary for his well-being; however, a parent who withholds medical treatment from any child who in good faith is under treatment by spiritual means alone through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall not, for that reason alone, be considered to be neglectful under any provision of this chapter; or
(ii) Who is otherwise without proper care, custody, supervision or support; or
(iii) Who, for any reason, lacks the special care made necessary for him by reason of his mental condition, whether the mental condition is having mental illness or having an intellectual disability; or
(iv) Who, for any reason, lacks the care necessary for his health, morals or being.
[5] ¶ 13. “This Court ordinarinot ordinarily reverse a trier of fact unless it can be said with confidence that the finding was manifestly wrong.” In re S., 47 So.3d 715, 720 (¶ 31) (Miss.Ct.App.2010) (citing In re I.G., 467 So.2d 920, 924 (Miss.1985)). The judge heard testimony from four different family members. They all stated that Joey was being sexually abused by his brother. One of the family members provided eyewitness testimony of a sexual encounter between Joey and his brother. DHS testified to the details of the May 21 forensic interview, which neither confirmed nor rejected the allegations of sexual abuse. Based on the evidence presented, we cannot say with the confidence that the judge was manifestly wrong in his determination.
¶ 14. We find that considering the evidence in the light most favorable to the State, a reasonable person could have found, by a preponderance of the evidence, that Joey was neglected. We find this issue is without merit.
Reunification
[6]¶ 15. Sharon also argues that the youth court should have reunited her with her son instead of granting Mary Jo legal and physical custody. Specifically, Sharon claims the judge failed to take into account all of the medical evidence presented and ignored DHS employee testimony supsup-port of reunification.
¶ 16. Mississippi Code Annotated section 43-21-103 (Rev. 2009) provides the following applicable statement about our youth courts’ duties to children:
It is the public policy of this state that the parents of each child shall be primarily responsible for the care, support, education and welfare of such children; however, when it is necessary that a child be removed from the control of such child’s parents, the youth court shall secure proper care for such child.
*565 ¶ 17. In neglect and abuse cases, the disposition order may include the following alternative:
Place the child in the custody of his parents, a relative or other person subject to any conditions and limitations as the court may prescribe. If the court finds that temporary relative placement, adoption or foster care placement is inappropriate, unavailable or otherwise not in the best interest of the child, durable legal custody may be granted by the court to any person subject to any limitations and conditions the court may prescribe; such durable legal custody will not take effect unless the child or children have been in the physical custody of the proposed durable custodians for at least one (1) year under the supervision of the Department of Human Services. The requirements of Section 43-21-613 as to disposition review hearings does not apply to those matters in which the court has granted durable legal custody. In such cases, the Department of Human Services shall be released from any oversight or monitoring responsibilities.
Miss.Code Ann. § 43-21-609(b) (Rev. 2009). Although the court did not use the specific language “durable legal custody” in its permanency order, we can infer from the order that the court granted durable legal custody to Mary Jo based on the following: the court made no mention of “temporary relative placement”; Joey had been living with Mary Jo for at least one year at the time of the permanency hearing; the court specifically stated it would retain jurisdiction over any future matters regarding Joey, including visitation and child support; and the court relieved DHS from any monitoring responsibilities.
¶ 18. At the permanency hearing, the court reviewed all of Joey’s medical and forensic reports. The court heard testimony from DHS employees, Sharon, and the GAL. The court correctly stated that DHS failed to show that no risk factors existed as to Joey’s safety in Sharon’s home. Ultimately, the court found that it was in Joey’s best interest to be placed in durable legal custody of his great aunt. The supreme court held in In re S.A.M., 826 So.2d 1266, 1274-75 (¶ 19) (Miss.2002), that the paramount concern in determining the proper disposition of custody issues is the best interest of the child, not reunification of the family. We find that the youth court did not err in finding that it was in Joey’s best interest to grant Mary Jo durable legal custody. This issue is without merit.
3. GAL
¶ 19. Sharon also claims that Joey was adversely affected by the GAL’s conduct at the November 29, 2012 hearing on the aunt’s motion to intervene and transfer. At the hearing, the aunt’s attorney requested access to DHS records. The GAL participated in the court’s discussion of whether the Joey’s aunt had standing to review the records. Sharon claims that, based on the GAL’s participation, the court should have appointed another attorney for Joey.
¶ 20. The youth court is required to appoint a GAL in all cases involving an abused or neglected child that result in a judicial proceeding. Miss.Code Ann. § 43 — 21—121(l)(e) (Rev. 2009). Section 43-21-121(3) states:
In addition to all other duties required by law, a guardian ad litem shall have the duty to protect the interest of a child for whom he has been appointed guardian ad litem. The guardian ad litem shall investigate, make recommendations to the court or enter reports as necessary to hold paramount the child’s best interest. The guardian ad litem is not *566 an adversary party and the court shall insure that guardians ad litem perform their duties properly and in the best interest of their wards. The guardian ad litem shall be a competent person who has no adverse interest to the minor. The court shall insure that the guardian ad litem is adequately instructed on the proper performance of his duties.
The GAL complied with the statute by submitting her recommendations to court and entering reports at the court’s request. When the GAL commented on the attorney’s request for access to records at the hearing, she was not arguing on behalf of Joey’s aunt. After careful review of the transcript from the November 2012 hearing, we find that the GAL was acting in the best interest of Joey. The court accepted the GAL’s report and her recommendations and followed them. This issue is without merit.
¶ 21. THE JUDGMENT OF THE COAHOMA COUNTY YOUTH COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ„ CONCUR.

. The names of the individuals have been changed to ensure confidentiality.

. The record indicates that Sharon is not the mother of Joey’s sister. The sister calls Sharon “Aunt Sharon’’ throughout the record.