# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00506-SCT

*IN THE INTEREST OF E. K., A MINOR,*
*TIMOTHY KING AND ELIZABETH KING*

*v.*

*MISSISSIPPI DEPARTMENT OF CHILD*
*PROTECTION SERVICES*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2016 |
| TRIAL JUDGE: | HON. JAMES COLEMAN RHODEN |
| TRIAL COURT ATTORNEYS: | WILLIAM SCOTT PHILLIPS |
| | CHADWICK L. SHOOK |
| | RENEE McBRIDE PORTER |
| COURT FROM WHICH APPEALED: | MARION COUNTY YOUTH COURT |
| ATTORNEY FOR APPELLANTS: | CHADWICK L. SHOOK |
| ATTORNEY FOR APPELLEE: | LAWRENCE E. HAHN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | VACATED AND RENDERED - 08/02/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from the Marion County Youth Court's adjudication of E.K.[1] as a

neglected child. A number of errors stem from this adjudication. First, E.K. was adjudicated

neglected even though her mother was not properly before the youth court and her father

---

[1]This Court does not use the name of a minor child in an opinion dealing with child custody and allegations of neglect. Therefore, the initials "E.K." will be used to refer to the child at issue here.

received no notice of the adjudication hearing.  Second, after review, we find that the neglect petition was legally insufficient to provide notice to E.K. or her parents of the neglect charges.  Third, the evidence offered to support a finding of neglect at the adjudication hearing was legally insufficient.  As such, we vacate the youth court's adjudication order and render judgment in favor of E.K. and her parents.

## FACTS AND PROCEDURAL HISTORY

¶2.    Elizabeth A. King and Timothy King are the parents of E.K.  E.K. was born on December 31, 2001.  With a history of ADHD, epilepsy, autism, mental disability and obsessive, compulsive disorder (OCD), E.K. functioned on the level of a two-year-old.

¶3.    Elizabeth and Timothy had been separated for two weeks at the time of the initial investigation in this case.  They had been divorced for four years in the past before having remarried.

¶4.    In December 2015, the Mississippi Department of Human Services Division of Family and Children's Services[2] ("DHS") was contacted by law enforcement officials about Elizabeth and E.K.  DHS responded to Elizabeth's residence on December 4, 2015.  Law enforcement officers on the scene were concerned that Elizabeth was high on drugs, due to her repetitive 911 calls.  According to the report, Elizabeth had called 911 multiple times,

---

[2] The Mississippi Department of Child Protection Services is styled as the appellee in this case.  The Mississippi Department of Child Protection Services was created as Mississippi's lead child welfare agency, separate from the Mississippi Department of Human Services.  Miss. Code Ann. § 43-26-1 (Supp. 2017).  As the majority of the record refers to the Mississippi Department of Human Services, we do so as well.  Further, the Youth Court Act continues to refer to the Mississippi Department of Human Services throughout its provisions.  *See* Miss. Code Ann. §§ 43-21-101–915 (Rev. 2015).

claiming that Timothy was in her attic or outside her home attempting to gain access to her residence.

¶5. DHS prepared an investigative report that catalogued its interactions with Elizabeth and E.K. "No abuse or neglect was substantiated" during DHS's visit, and the report found that Elizabeth loved E.K., was protective of her, and assisted her. Elizabeth and E.K. had a "great relationship." Further, there was no evidence of serious physical harm or injury and no reported or evident physical injuries. Timothy's history of domestic violence toward Elizabeth, Elizabeth's fear of Timothy, and the fact that Timothy "has not harmed [E.K.]" were catalogued in the report. Elizabeth denied using drugs but did test positive for marijuana use. Concerning Elizabeth's positive test for marijuana, the report stated that "this is being addressed and will be recommended for services by the agency." One narrative attached to the investigative report recounted that Elizabeth admitted to taking a "Colonapin [sic] to try to get some sleep." Elizabeth acknowledged that the "Colonapin"[3] was not prescribed for her by a physician.

¶6. According to the report, Elizabeth secured a protective order against Timothy and changed the locks to her residence. Last, the report noted that DHS was ordered by the Marion County Youth Court "to open prevention case to monitor to [sic] safety in the home."

¶7. The record contains a letter that accompanied the DHS investigative report and recommended that the youth court informally monitor the Kings. The initial intake order entered in the youth court followed the letter's recommendation and ordered informal

_____

[3] DHS notes that this could be a misspelling of "Klonopin," the chemical name for which is "clonazepam."

3

monitoring of the Kings or E.K. DHS's court summary next revealed that Elizabeth had entered a service agreement on January 27, 2016. According to the summary, Elizabeth had tested negative for drugs on January 5, 2016, and had tested "negative dilute" on February 2, 2016; March 3, 2016; and March 21, 2016. On April 20, 2016, Elizabeth had informed DHS that she was tired and frustrated and would not take any more drug tests.

¶8.    As a result of Elizabeth's refusal, a second intake order was entered in the youth court. This intake order directed a formal petition to be entered. DHS directed a formal petition to adjudicate E.K. as a neglected child be entered. Count 1 of the petition alleged:

> That on or about 04/20/2016, in MARION COUNTY, MISSISSIPPI, [E.K.] did become a NEGLECTED CHILD as defined by §43-21-105(1) of the Mississippi Code of 1972, Annotated. Prevention case was open [sic] to monitor the safety issues in the home. During a visit to the home the mother told the DHS Worker that she was tires [sic] and frustrated and would not do any more drug tests.

Renee Porter was appointed as the attorney and guardian ad litem (GAL) for E.K.

¶9.    DHS issued summons to Elizabeth and Timothy on May 18, 2016, for an adjudication hearing on June 6, 2016. The summons was returned unserved on June 2, 2016, with the note: "unable to make contact."

¶10.    The adjudication hearing was held on June 6, 2016. Elizabeth, E.K., and the GAL were present. At the hearing, Michelle Tony, a DHS caseworker, testified to the grounds for the neglect petition. Tony testified that the agency had been contacted by law enforcement officers who were concerned that Elizabeth was mentally ill. Tony maintained that "[t]he home checked out fine" and that a prevention case was opened after Elizabeth tested positive for marijuana. In response to the GAL's questioning, Tony also mentioned that Elizabeth

4

was refusing to take any additional drug tests. From the bench, the youth court then adjudicated E.K. as neglected.

¶11.   It appears from the transcript that the youth court immediately proceeded to the disposition hearing.[4] The GAL asked Elizabeth if she would take a drug test, and—for the first time on the record—Elizabeth spoke, replying: "I'll go take a drug test, but my child ain't neglected. And you . . . every time you are at my house, you state that [E.K.] is in the best of care. Did you not? Do you not--" The prosecutor immediately objected, and the GAL moved to continue the hearing to allow Elizabeth to take a drug test. The court then questioned Elizabeth concerning the "negative-dilute" drug tests. The court informed Elizabeth, "We're concerned about drug use. If there's no drug use, we're not concerned. We are concerned about the child. She seems to be doing well under your care, but we want to continue that. We just need a little help from you." Elizabeth stated, "If [the hair follicle drug test is] court ordered, I'll take it." The youth court continued the hearing until June 20, 2016, and ordered Elizabeth and Timothy to take a hair-follicle drug test.

¶12.   On June 20, 2016, the youth court entered an emergency custody order, awarding custody of E.K. to the Marion County Department of Human Services pending a shelter hearing. Another emergency custody order awarded custody of E.K to DHS and ordered law

---

[4] Section 43-21-601 of the Youth Court Act provides that the disposition hearing "shall be separate, distinct and subsequent to the adjudicatory hearing." Miss. Code Ann. § 43-21-201(1) (Rev. 2015). From a review of the transcript, it is not readily apparent that the youth court heeded this provision. *See **In Interest of C.R.**,* 604 So. 2d 1079, 1082 (Miss. 1992) (reversing for failure to hold a disposition hearing separate from the adjudicatory hearing). As the errors discussed *infra* are dispositive, we do not base our decision on this possible error.

5

enforcement officials to assist in locating E.K. At the shelter hearing held on June 28, 2016, Tony explained that E.K. could not be located during this time. Tony testified that on June 25, 2016, law enforcement officials found E.K. and DHS took custody of her. At this same hearing, counsel for the Kings questioned the sufficiency of the adjudication of E.K. as neglected. The GAL objected to the attacks on the adjudication of E.K. After the hearing, the youth court determined that custody should remain with DHS. The youth court also ordered Elizabeth and Timothy to submit to a hair-follicle drug test.

¶13. Elizabeth's and Timothy's counsel formally entered an appearance on July 1, 2016, and filed two motions. The first motion was to set aside the shelter order, to return E.K. to Elizabeth and Timothy and to stay local proceedings; the second motion was for permission to seek interlocutory appeal. The second motion attacked the evidentiary basis of the adjudication of E.K. as a neglected child. After a hearing, the youth court entered an order permitting Elizabeth's and Timothy's interlocutory appeal "of this Court['s] June 6, 2016 Adjudication Order. . . ."[5]

¶14. On February 21, 2017, the youth court again ordered Elizabeth to submit to a hair-follicle test due to her test showing "diluted." This time, though, it found that Timothy did not have to submit to a hair follicle test "in that none of his test[s] were questionable." Elizabeth submitted to the hair-follicle test on March 3, 2017. On April 3, 2017, the youth court entered a permanency order, granting custody of E.K to Elizabeth and Timothy.[6]

---

[5] This Court denied the petition for interlocutory appeal on September 21, 2016.

[6] E.K. had been at home under a ninety-day trial placement since January 17, 2017.

¶15. E.K., Elizabeth, and Timothy now appeal the sufficiency of the neglect petition, the sufficiency of the evidence supporting adjudication, the lack of notice and service of process to Elizabeth and Timothy for the adjudication hearing, several of the custody orders and the orders concerning the hair-follicle drug tests. The issues related to the adjudication order are dispositive of the appeal before us.

## STANDARD OF REVIEW

¶16. "'The appellate standard of review for youth court proceedings is the same as that which we apply to appeals from chancery court. . . .'" *In re J.P.*, 151 So. 3d 204, 208 (Miss. 2014) (quoting *A.B. v. Lauderdale Cty. Dep't of Human Servs.*, 13 So. 3d 1263, 1266–67 (Miss. 2009)). Also, "[t]his Court reviews matters of law de novo." *Id*. Statutory interpretation, of course, is a matter of law. *5K Farms, Inc. v. Mississippi Dep't of Revenue*, 94 So. 3d 221, 225 (Miss. 2012) (citing *Ameristar Casino Vicksburg, Inc. v. Duckworth*, 990 So. 2d 758, 759 (Miss. 2008)).

## ANALYSIS

### I. Notice, Waiver of Service of Process and Waiver of the Right to Representation

¶17. The Kings argue that Elizabeth did not knowingly or voluntarily waive her right to service of process or her right to representation of counsel. They also maintain that Timothy received no notice of the adjudication hearing. After review of the record, we agree with the Kings.

¶18. Several statutory provisions of the Youth Court Act govern the issue of notice, waiver of the right to service of process, and protection of the right to counsel. The policy statement

7

of the Youth Court Act provides, "It is the public policy of this state that the *parents of each child* shall be primarily responsible for the care, support, education and welfare of such children. . . ." Miss. Code Ann. § 43-21-103 (Rev. 2015) (emphasis added). "Parent" is defined as "the father or mother to whom the child has been born, or the father or mother by whom the child has been legally adopted." Miss. Code Ann. § 43-21-105(e) (Supp. 2017). Also, in the Youth Court Act, "The singular includes the plural, the plural the singular and the masculine the feminine when consistent with the intent of this chapter." Miss. Code Ann. § 43-21-105(w) (Rev. 2015).

¶19.    In a youth court proceeding,

> (1) Each party shall have the right to be represented by counsel at all stages of the proceedings including . . . adjudicatory and disposition hearings . . . .

> (2) When a party first appears before the youth court, the judge shall ascertain whether he is represented by counsel and, if not, inform him of his rights including his right to counsel. If the court determines that a parent or guardian who is a party in an abuse, neglect or termination of parental rights proceeding is indigent, the youth court judge may appoint counsel to represent the indigent parent or guardian in the proceeding.

Miss. Code Ann. § 43-21-201(1)–(2) (Rev. 2015). Further, "[a]ll parties . . . shall have the right at any hearing in which an investigation, record or report is admitted in evidence . . . to subpoena, confront and examine the person who prepared or furnished data for the report[] and . . . to introduce evidence controverting the contents of the report." Miss. Code Ann. § 43-21-203(9)(a)–(b) (Rev. 2015).

¶20.    Once a petition is filed and a hearing is set:

> (1) . . . the judge . . . shall order the clerk of the youth court to issue a summons to the following to appear personally at such hearing:

8

(a) the child named in the petition;

(b) the person or persons who have custody or control of the child;

(c) the parent or guardian of the child if such parent or guardian does not have custody of the child; and

(d) any other person whom the court deems necessary.

Miss. Code Ann. § 43-21-501(1)(a)–(d) (Rev. 2015)  Also,

(2) A party other than the child may waive service of summons on himself by written stipulation or by voluntary appearance at the hearing and in the case of written stipulation or voluntary appearance, the youth court may, in its discretion, proceed to a hearing regardless of the date set for the hearing if all other parties are properly before the youth court. At the time of the waiver, a copy of the petition shall be given to the party.

Miss. Code Ann. § 43-21-507(2) (Rev. 2015).

¶21.    Further, under the Youth Court Act,

(1) At the beginning of each adjudicatory hearing, the youth court shall:

(a) verify the name, age and residence of the child who is the subject of the cause and ascertain the relationship of the parties, each to the other;

(b) ascertain whether all necessary parties are present and identify all persons participating in the hearing;

(c) ascertain whether the notice requirements have been complied with and, if not, whether the affected parties intelligently waived compliance in accordance with Section 43-21-507;

(d) explain to the parties the purpose of the hearing and the possible dispositional alternatives thereof; and

(e) explain to the parties:

(i) the right to counsel;

(ii) the right to remain silent;

9

(iii) the right to subpoena witnesses;

(iv) the right to cross-examine witnesses testifying against him; and

(v) the right to appeal.

(2) The youth court should then ascertain whether the parties before the youth court are represented by counsel. If a party before the youth court is not represented by counsel, the youth court shall ascertain whether the party understands his right to counsel. If the party wishes to retain counsel, the youth court shall continue the hearing for a reasonable time to allow the party to obtain and consult with counsel of his choosing. . . .

Miss. Code Ann. § 43-21-557(1)–(2) (Rev. 2015). "When used in a statute, the word 'shall' is mandatory and the word 'may' is discretionary." *D.D.B. v. Jackson Cty. Youth Court*, 816 So. 2d 380, 382 (Miss. 2002).

¶22. Several cases also are implicated in this analysis. Much of Mississippi's caselaw that involves notice and service of process in youth court interpreted previous versions of the Youth Court Act. For instance, this Court, in reversing a delinquency adjudication in which notice was not served to the minor or his parents, recognized that "the Court has no jurisdiction of the person until process has been served upon the minor and his parents, or persons standing in loco parentis." *In Interest of Edwards*, 298 So. 2d 703, 704 (Miss. 1974). Further this Court declared that, under the Mississippi Code of 1941, "notice to the parent is an indispensable prerequisite to the jurisdiction of the [youth] court to hear and determine the case, unless such notice be waived by the voluntary appearance of such parent." *Sharp v. State*, 127 So. 2d 865, 869 (Miss. 1961); *see Hopkins v. Youth Court of Issaquena Cty.*, 227 So. 2d 282, 284 (Miss. 1969) ("The youth court is without jurisdiction

10

unless the parents or guardian if available, be summoned as required by statute."); *Monk v. State*, 116 So. 2d 810, 810–11 (Miss. 1960); *Walker v. State*, 119 So. 2d 277, 277 (Miss. 1960).

¶23.    Under the current Youth Court Act, this Court has affirmed these same principles. *See In re J.P.*, 151 So. 3d 204, 210 (Miss. 2014) (quoting *Hopkins*, 227 So. 2d at 284) ("The youth court is without jurisdiction unless the parents or guardian if available, be summoned *as required by statute.*") (emphasis in original) (reversing on grounds other than lack of notice to parent).  In *In re N.W.*, this Court reversed the adjudication of a minor where the father lacked notice of the adjudication hearing. *In re N.W.*, 978 So. 2d 649, 654 (Miss. 2008).  There, the mother was present at the adjudication hearing, but this Court—citing Section 43-21-557—recognized reversible error where there was no evidence that the father had been noticed of the hearing. *Id.*

¶24.    Also, the Court of Appeals has found these same principles dispositive under the current Youth Court Act. *See In Interest of M.M.*, 220 So. 3d 285, 288 (Miss. Ct. App. 2017) ("Even if the mother had actual notice of the hearing via her conversations with the MDHS employee, *actual notice is insufficient to cure a jurisdictional defect in service of process.*") (emphasis added).  The *In Interest of M.M.* court relied on both *Sharp* and *In re J.P.* as well as Section 43-21-507 to reverse and render the adjudications. *Id.*

¶25.    Beyond the issue of notice, this Court has reversed an adjudication of neglect where the youth court failed to instruct the child's mother and stepfather of their right to counsel. *In Interest of I.G.*, 467 So. 2d 920, 922 (Miss. 1985).  The *I.G.* Court relied on both Sections

11

43-21-201 and 43-21-557 to reverse the youth court's citation for contempt. *Id*.

*Elizabeth*

¶26.   Elizabeth was a required party to E.K.'s neglect adjudication.  Miss. Code Ann. § 43-21-501(1)(c) (Rev. 2015).  While service of process had been issued to her, it was returned, marked "unable to make contact."  There is no evidence in the record or the transcript that service was perfected on her.

¶27.   It is clear that Elizabeth, though, was present at the adjudicatory hearing and the initial disposition hearing.  Still, her presence alone is not enough to find that she waived her right to service of process.  Even a cursory review of the record reveals that the youth court did not engage Elizabeth on the record to determine if she waived her rights under either Section 43-21-507 or Section 43-21-557.

¶28.   This lack of interaction with Elizabeth also infringed Elizabeth's due-process right to representation.  Under Section 43-21-201, she had the right to representation of counsel.  The same section places a duty upon the youth court to insure that Elizabeth is aware of her right.  Miss. Code Ann. § 43-21-201(2) (Rev. 2015).  Clearly indicating the importance of Elizabeth's right to representation, Section 43-21-557 reiterates the youth court's duty to make sure that a party understands her right to counsel.  Miss. Code Ann. § 43-21-557(1)(e)(I) (Rev. 2015).  It further provides a right to a continuance should the party wish to engage representation. Miss. Code Ann. § 43-21-557(2) (Rev. 2015).

¶29.   While Elizabeth does not need to show prejudice, she can here.  For instance, the first time that Elizabeth spoke on the record was during the initial disposition hearing, which was

12

held immediately after E.K was adjudicated neglected. Speaking for the first time, Elizabeth consented to a drug test, but, in doing so, revealed that she did not consent to or agree with the youth court's adjudication of E.K. as a neglected child. Elizabeth declared: "I'll go take a drug test, but my child ain't neglected. And you . . . every time you're at my house, you state that [E.K.] is in the best care. Did you not? Do you not --"[7] At this point, the youth court prosecutor interrupted Elizabeth with an objection, presumably since E.K. already had been adjudicated as neglected. The youth court eventually continued the disposition hearing and ordered a drug test for Elizabeth.

¶30.    The first time that Elizabeth spoke on the record, she immediately sought to contradict the evidence that was entered at the adjudication hearing, as was her right under Section 43-21-557(1)(e)(iv). The fact that Elizabeth improperly raised this evidence at the disposition hearing instead of at the adjudication hearing only underscores her lack of understanding of the proceedings and the gravity of the youth court's violation of her right to representation.[8]

*Timothy*

¶31.    Like Elizabeth, Timothy also was a required party to E.K.'s neglect adjudication. Miss. Code Ann. § 43-21-501(1)(c) (Rev. 2015). The record, though, is clear that he

---

[7] The precise identity of whom Elizabeth was questioning is unclear from the transcript. It is likely, though, that she was questioning the DHS caseworker, who had just testified during the adjudication hearing.

[8] Even if Elizabeth knowingly waived her rights, the youth court still would have erred in proceeding to the adjudication, as Timothy was not present for the hearing. "[T]he youth court may, in its discretion, proceed to a hearing . . . if all other parties are properly before the youth court." Miss. Code Ann. § 43-21-507(2) (Rev. 2015).

received no notice of either the adjudication hearing or the initial disposition hearing. While summons was issued to him, as to Elizabeth, it also was returned, marked "unable to make contact." To the extent that Timothy could not be found or served (an argument not raised by DHS on appeal), Section 43-21-509 provides the youth court with the authority to issue a warrant to bring him "into the custody of the youth court." Miss. Code Ann. § 43-21-509 (Rev. 2015).

¶32. Without the required notice, Timothy's situation is analogous to the father in *In re N.W. In re N.W.*, 978 So. 2d at 654. Timothy was denied his right to contest the adjudication of E.K. and was not noticed concerning the initial disposition hearing.

¶33. Timothy also can prove prejudice. Beyond the fact that his daughter was found to be neglected without his having an opportunity to contest the adjudication, the youth court ordered Timothy to submit to drug screen, even though he was not before the court. Such an order is clearly void and a violation of Timothy's rights.

¶34. Elizabeth did not knowingly waive her rights to service of process or to representation by counsel. Timothy was not noticed and was not before the youth court for the adjudicatory hearing or the initial disposition hearing. The youth court's adjudication of E.K. as neglected and subsequent order requiring a drug test were in violation of the Kings' rights.

## II. Sufficiency of the Petition of Neglect

¶35. The Kings also contest the sufficiency of the petition alleging that E.K. was a neglected child. "[A] petition which institutes a youth court proceeding must recite factual allegations specific and definite enough to fairly apprise the juvenile, his parents, custodians

14

or guardians of the particular act or acts of misconduct or the particular circumstances which will be inquired into at the adjudicatory proceedings." ***In Interest of Dennis***, 291 So. 2d 731, 733 (Miss. 1974).

¶36.    Section 43-21-105 defines "neglected child" within the Youth Court Act:

(l) "Neglected child" means a child:

(i) Whose parent, guardian or custodian or any person responsible for his care or support, neglects or refuses, when able so to do, to provide for him proper and necessary care or support, or education as required by law, or medical, surgical, or other care necessary for his well-being; however, a parent who withholds medical treatment from any child who in good faith is under treatment by spiritual means alone through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall not, for that reason alone, be considered to be neglectful under any provision of this chapter; or

(ii) Who is otherwise without proper care, custody, supervision or support; or

(iii) Who, for any reason, lacks the special care made necessary for him by reason of his mental condition, whether the mental condition is having mental illness or having an intellectual disability; or

(iv) Who, for any reason, lacks the care necessary for his health, morals or well-being.

Miss. Code Ann. § 43-21-105(l)(i)–(iv) (Rev. 2015).   Section 43-21-455 specifically addresses the content of a neglect petition:

(1) The petition shall set forth plainly and concisely with particularity:

(a) identification of the child, including his full name, birth date, age, sex and residence;

(b) identification of the parent, guardian or custodian including the name and residence of the child's parents, the name and residence of

15

the child's legal guardian, if there be one, any person or agency in whose custody the child may be and the child's nearest relative if no parent or guardian be known;

(c) a statement of the facts, including the facts which bring the child within the jurisdiction of the youth court and which show the child is . . . a neglected child . . . ;

. . .

(e) a prayer for the type of adjudicatory relief sought; and

(f) if any of the facts herein required are not known by the petitioner.

Miss. Code Ann. § 43-21-455(1)(a)–(c), (e)–(f) (Rev. 2015).

¶37.   Precedent on this point of law is sparse in Mississippi. Soon after the current Youth Court Act was passed into law, this Court addressed a number of petitions that it found to be insufficient. Most, if not all, of these cases were delinquency proceedings that relied on the Court's analysis in *In Interest of Dennis*. There, this Court determined that the petition on which the minor was adjudicated was insufficient to notice the minor or his parents of the specific acts of misconduct. *In Interest of Dennis*, 291 So. 2d at 733. This Court held that "where a charge of delinquency is based upon the violation of a criminal law, the petition must charge the offense with the same particularity required in a criminal indictment." *Id*. The Court ultimately reversed the delinquency adjudication where "the facts which would bring [the minor] within the purview of the 'Youth Court Law' were stated in the petition as 'grand larceny and breaking and entering.'" *Id*. at 732–33; *see also In Interest of Dollar*, 293 So. 2d 458, 459 (Miss. 1974); *In Interest of Burnworth*, 293 So. 2d 461, 462 (Miss. 1974); *In Interest of Dudley*, 310 So. 2d 919, 920 (Miss. 1975).

16

¶38.   First, we acknowledge the difference between a delinquency proceeding (which is quasi-criminal) and a neglect proceeding.  While a neglect petition perhaps should not be held to the same standard as a criminal indictment, the petition—given Sections 43-21-455 and 43-21-105—has to be legally sufficient to provide the minor and her parents notice of "the particular circumstances which will be inquired into at the adjudicatory proceedings." *In Interest of Dennis*, 291 So. 2d at 733.

¶39.   The petition here cited the definition of "neglected child" under Section 43-21-105(1). The facts described in the petition to adjudicate E.K. as neglected, though, were minimal. In total, the facts in the petition read: "Prevention case was open to monitor the safety issues in the home.  During a visit to the home the mother told the DHS Worker that she was tired and frustrated and would not do any more drug tests."

¶40.   Without any connection to E.K. as a neglected child these facts failed to inform E.K., Elizabeth or Timothy of the particular circumstances that would be adjudicated.  The Kings were left to guess the connection between Elizabeth's frustration and decision not to submit to further testing and the neglect of E.K.  There were no facts to "show" that E.K. was "a neglected child."  Miss. Code Ann. § 43-21-455(1)(c) (Rev. 2015).

¶41.   The insufficiency of the petition is clearer when considering the context of this case as revealed by the record.  The investigative reports are full of commendations of Elizabeth's care for E.K., their healthy relationship and the love that E.K. demonstrates towards Elizabeth.  In the absence of a causal connection between the facts alleged in the petition and the petition's charge of neglect, the petition was legally insufficient to provide notice to E.K.,

17

Elizabeth or Timothy of "the particular circumstances which w[ere to] be inquired into at the adjudicatory proceedings." *In Interest of Dennis*, 291 So. 2d at 733.

### III.     Sufficiency of the Evidence of Adjudication

¶42.     The Kings further maintain that the evidence on which the youth court adjudicated E.K. as neglected was insufficient.  This Court has described the standard of review of the sufficiency of the evidence supporting an adjudicatory order:

> When a Youth Court makes an adjudication of neglect, this Court considers all the evidence before the Youth Court in the light most favorable to the State. If the evidence so considered is opposed to the finding of the Youth Court with such force that "reasonable men" could not have found as the Youth Court did by a preponderance of the evidence, this Court must reverse.

*In Interest of C.R.*, 604 So. 2d 1079, 1083 (Miss. 1992) (citations and quotations omitted); *see also* Miss. Code Ann. § 43-21-561 (Rev. 2015) (recognizing the preponderance-of-the-evidence standard in neglect adjudications).   Section 43-21-551 provides that "an adjudicatory hearing shall be held . . . to determine whether there is legally sufficient evidence to find that the child is . . . a neglected child." Miss. Code Ann. § 43-21-551(1) (Rev. 2015).  Moreover, "[i]n arriving at its adjudicatory decision, the youth court shall consider only evidence which has been formally admitted at the adjudicatory hearing." Miss. Code Ann. § 43-21-559(1) (Rev. 2015).

¶43.     From a review of the transcript, we find no evidence entered at the adjudication that related to E.K.'s status as a neglected child.  Tony, the DHS caseworker, testified that Elizabeth's home checked out fine and that "she was just very frightened of her husband." Tony maintained that Elizabeth was given a drug test and tested positive for marijuana.  She

18

also testified that Elizabeth refused to take further drug tests.

¶44. None of the testimony at the hearing proved that E.K. was neglected. No evidence was offered to show that Elizabeth's fear of Timothy somehow led to E.K. being neglected. Further, the evidence of Elizabeth's positive test for marijuana usage—while potentially relevant—was not shown to have affected E.K. at all. In fact, Tony testified that Elizabeth's home "checked out fine"—evidencing Elizabeth's care for E.K. In order to have been sufficient to adjudicate E.K. as a neglected child, the evidence must have shown that she actually was neglected.

¶45. Elizabeth's marijuana usage does not negate the requirement of a causal connection between the drug usage and the neglect. This is a familiar concept under the Youth Court Act in other contexts. For instance, a positive drug test for marijuana usage is insufficient on its own to establish probable cause for the issuance of a custody order. Miss. Code Ann. § 43-21-301(3) (Rev. 2015). In part, Section 43-21-301 reads:

> A finding of probable cause . . . shall not be based solely upon a positive drug test of a child's parent for marijuana; *however, a finding of probable cause may be based upon an evidence-based finding of harm to the child or a parent's inability to provide for the care and supervision of the child due to the parent's use of marijuana.*

*Id*. (emphasis added). Here, there was no testimony or evidence of any relation between Elizabeth's positive test result and E.K.'s status as neglected.[9]

---

[9] Further, the youth court's complimentary comments to Elizabeth at the initial disposition hearing—just after the adjudication of E.K. as neglected—support the conclusion that Elizabeth's drug use had not affected E.K. Addressing Elizabeth's drug use, the youth court stated: "We're concerned about drug use. If there's no drug use, we're not concerned. We are concerned about the child. *She seems to be doing well under your care*, but we want to continue that. We just need a little help from you." (Emphasis added.)

19

¶46. The youth court did not err in ordering DHS to monitor the Kings. Its authority to do so—based on a preliminary inquiry after receiving a report from DHS—is found in Mississippi Code Section 43-21-357(2)(c). The evidence of Elizabeth's drug usage was sufficient for DHS to monitor the Kings and E.K. Further, Elizabeth's later, diluted negative results "may [have] create[d] suspicion, or perhaps even an inference of drug use" that merited further monitoring and investigation. *A.B. v. Lauderdale Cty. Dep't of Human Servs.*, 13 So. 3d 1263, 1268 (Miss. 2009).

¶47. Elizabeth's refusal to submit to further drug screens, however, did not automatically render E.K. neglected. As Elizabeth had entered into a service agreement with DHS, she arguably was violating the youth court's initial intake order that required DHS to monitor E.K. The solution to Elizabeth's refusal to take additional drug tests, though, was to seek to enforce the intake order against Elizabeth in the youth court. The solution was not to have E.K. adjudicated neglected where the evidence did not support that finding. Even when viewed in the light most favorable to the adjudication, the evidence failed to demonstrate that E.K. was neglected within the meaning of Section 43-21-105(l).

## CONCLUSION

¶48. First, a review of the record and transcript reveals that Elizabeth did not knowingly or voluntarily waive her right to service of process or her right to representation of counsel for E.K.'s adjudicatory hearing and the subsequent disposition hearing. The record also is devoid of any evidence of notice to Timothy of his daughter's adjudication. Despite the fact that Elizabeth was not properly before the court and Timothy was not before the court at all,

20

the youth court adjudicated their daughter neglected and ordered them to submit to drug screens. Second, the neglect petition was legally insufficient to give notice to E.K., Elizabeth or Timothy of "the particular circumstances which w[ere to] be inquired into at the adjudicatory proceedings." ***In Interest of Dennis***, 291 So. 2d at 733. Third, the evidence offered at the adjudicatory hearing of E.K.'s status as neglected was insufficient to support the neglect adjudication.

¶49. While we do not doubt that the youth court acted in a sincere belief that it had E.K.'s interests in mind, the record before us reveals a worrisome disregard for the provisions of the Youth Court Act. The provisions of the Youth Court Act are designed to protect "the child's best interest." Miss. Code Ann. § 43-21-103 (Rev. 2015). Further, the provisions support our state's public policy "that the parents of each child shall be primarily responsible for the care, support, education and welfare of such children." *Id*. Here, all of the proceedings after the adjudication hearing are hopelessly infected by the errors discussed above. Thus, we vacate the youth court's adjudication order and render final judgment in favor of the Kings.

¶50. **VACATED AND RENDERED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL AND ISHEE, JJ., CONCUR. BEAM, J., NOT PARTICIPATING.**

21