# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CT-00420-SCT

*IN THE INTEREST OF A.R.H., A MINOR:*
*REDONN MALONE*

*v.*

*JACKSON COUNTY DEPARTMENT OF CHILD*
*PROTECTION SERVICES AND MISSISSIPPI*
*DEPARTMENT OF CHILD PROTECTION*
*SERVICES*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2023 |
| TRIAL JUDGE: | HON. STACIE ELIZABETH ZORN |
| TRIAL COURT ATTORNEYS: | MICHAEL WILSON BRELAND |
| | V. DENISE LEE |
| | MAXINE D. LAWSON-CONWAY |
| | TERRY JOSEPH HOLTZ |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY YOUTH COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JENNIFER LOUISE MORGAN |
| | JESSICA LYNN BATES |
| ATTORNEYS FOR APPELLEE: | KRISTI DUNCAN KENNEDY |
| | MICHAEL WILSON BRELAND |
| | KIMBERLY GOLDEN GORE |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND REMANDED - 06/18/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1. After A.R.H. was born to Latisha H.[1] and Redonn Malone, A.R.H. was adjudicated

---

[1]This Court uses initials to protect the child's privacy.

neglected.[2] Malone was incarcerated at the time of A.R.H.'s birth, and the youth court found that his criminal history amounted to a statutory aggravated circumstance sufficient to bypass parental reunification efforts under Mississippi Code Section 43-21-603(7)(c)(i) and (iv). The Court of Appeals affirmed the judgment of the youth court. Because the youth court and the Court of Appeals' decisions are in direct contradiction with the plain reading of Section 43-21-603(7)(c)(i), this Court reverses those decisions and remands the case to the youth court for further proceedings.

## FACTS AND PROCEDURAL HISTORY[3]

¶2. A.R.H. was born to Latisha and Malone in November 2022. At birth, A.R.H.'s urine tested positive for cocaine and fentanyl, and Latisha tested positive for cocaine. At the time, Malone was incarcerated on charges of felony aggravated assault and felony bond revocation; Malone had been incarcerated in the months before A.R.H's birth, and he has been continuously incarcerated since that time. Consequently, the youth court entered an emergency custody order placing A.R.H. in the custody of Child Protection Services (CPS), appointed a guardian ad litem (GAL) for A.R.H., and scheduled a shelter hearing for November 16, 2022.

¶3. At the shelter hearing, the youth court ordered that A.R.H. remain in CPS custody, ordered paternity testing, and referred the case to the youth court prosecutor to file a neglected child complaint. The Jackson County youth court prosecutor did so, "alleging that

---

[2]Latisha has not been a party to any appeals.

[3]The facts are taken largely from the Court of Appeals opinion.

2

[A.R.H.] was a neglected child because 'the mother of said minor, Latisha . . . , suffer[ed] from extensive substance use and/or abuse issues,' including the use and abuse of 'cocaine and fentanyl, causing said substances to be in [A.R.H.'s] system at the time of birth.'" ***Malone v. Jackson Cnty. Dep't of Child Prot. Servs. (In re Int. of A.R.H.)***, 412 So. 3d 326, 328 (Miss. Ct. App. 2024) (alterations in original).

¶4. Latisha failed to appear at the two December 2022 adjudicatory hearings on the youth court prosecutor's petition, despite CPS's attempts to contact her, but Malone was transported from the detention center and was present for both of the hearings. At the second adjudicatory hearing, "[t]he youth court accordingly found that Latisha had voluntarily made herself absent from the proceedings." ***Id.*** At that hearing, the youth court also adjudicated A.R.H. to be neglected.

¶5. At the disposition hearing, after Malone's paternity had been confirmed, the youth court determined that reunification efforts with Latisha should be bypassed and then considered reunification plans for Malone. CPS recommended that Malone "enter into a service plan with CPS and complete the rehabilitative tasks set forth by CPS. The service plan recommended a permanency plan of reunification with the parents, along with a concurrent plan of custody with a relative." ***Id.***

¶6. A youth court employee, intake officer Katy Frazier, however, disagreed with CPS's service plan. Instead, the intake officer requested that the court bypass any reasonable efforts toward reunification based on Malone's extensive criminal history. The intake officer detailed several of Malone's crimes, including domestic violence against Latisha, and noted

3

that at the time of the disposition hearing, Malone was incarcerated in connection with a September 2021 aggravated-assault charge. The employee thus argued that it would not be in A.R.H.'s "best interest for [the child] to be placed in a home environment where domestic violence had occurred." *Id.* at 329.

¶7. The GAL agreed with the intake officer's recommendation to bypass reasonable efforts towards A.R.H's reunification with Malone. In response to the recommendations to bypass reasonable efforts towards reunification,

> Malone's counsel argued that according to the operative words in section 43-21-603(7)(c), parental reunification can only be bypassed at the disposition stage where the aggravated circumstances involved a child. Malone's counsel asserted that none of the crimes detailed by Frazier involved a child, so "the plain reading of the statute . . . simply does not apply."

*Id.* (alteration in original).

¶8. Upon questioning by the youth court about how reunification could work with an incarcerated parent, CPS responded:

> It's policy that our first plan be reunification, to work with the family to . . . put services in the home to help with the issues that they have. However, the court can rule how, but we have to work with reunification of the parent unless he did something to a child. That's our policy.

*Id.* (alteration in original).

¶9. While the youth court "acknowledged that Malone was excited about being a father for the first time in his life," it noted that its ultimate duty was to make decisions that are in A.R.H.'s best interests. *Id.* at 329-30. It took the disposition under advisement pending briefing from the parties on the issue of aggravated circumstances and bypassing reunification efforts.

4

¶10.    In its February 28, 2023 disposition order, the youth court accepted CPS's

recommendation to bypass reasonable efforts for Latisha, but did not

> accept CPS's recommendation to reunify [A.R.H.] with Malone. The youth
> court found that pursuant to section 43-21-603(7)(c), "aggravated
> circumstances exist in this matter such that reasonable efforts to maintain the
> child within the home of his father shall not be required." The youth court
> explained that Malone "has an extensive violent criminal history as well as
> history of drug use . . . . [And [h]e is presently incarcerated awaiting trial on
> aggravated assault."

*Id.* at 330.  The youth court then detailed Malone's lengthy criminal history, which includes

convictions for multiple drug crimes, voluntary manslaughter with use of a deadly weapon,

disorderly conduct, aggravated assault, and domestic violence.  *Id.*   Thus, the youth court

determined that Malone's violent criminal history constituted aggravated circumstances

sufficient to bypass reasonable efforts for reunification, it ordered that A.R.H. remain in CPS

custody, and it "set a permanency hearing for March 27, 2023" "to determine [A.R.H.]'s

placement." *Id.*

¶11.    At the permanency hearing, CPS presented the proposed permanency plan for A.R.H.,

consisting of terminating Malone's parental rights and placing A.R.H. with a relative.

"Malone and his counsel were present at the hearing and objected to the court's February 28,

2023 disposition order bypassing reunification with Malone." *Id.* at 331. The youth court

affirmed its prior decision and "ordered CPS to proceed with the necessary paperwork to

begin the process of terminating Malone's parental rights. The court adopted CPS's proposed

permanency plan of termination of rights and adoption with a concurrent plan for placement

with a relative." *Id.*

¶12. "On March 27, 2023, Malone pled guilty to aggravated assault in circuit court and was sentenced to serve fifteen years in custody and five years of post-release supervision. On that same day, Malone appealed the youth court's February 28, 2023 disposition order bypassing reunification efforts." *Id.*

¶13. In his appeal, Malone argued that the youth court erred by expanding Section 43-21-603(7)(c) to circumstances beyond the plain language of the statute, specifically expanding it to include his violent criminal history that had nothing to do with A.R.H. or any child. He also argued that the youth court erred by relying on information outside the record.

¶14. A divided Court of Appeals affirmed the judgment of the youth court. The Court of Appeals first applied a very deferential standard of review to the youth court decision, noting that the youth court was the trier of fact and that the Court of Appeals would "only reverse a youth court's findings 'if reasonable men could not have found as the youth court did by a preponderance of the evidence[.]'" *In re Int. of A.R.H.*, 412 So. 3d at 331 (alteration in original). Then, it determined that the youth court was within its discretion to determine that Malone's criminal history constituted aggravating circumstances under the statute. *Id.* at 333. Last, it found no error in the youth court's consideration of evidence given the broad discretion granted youth courts regarding evidence and testimony at disposition hearings. *Id.* at 334-35.

¶15. Judge McDonald dissented, arguing that the statutory criteria for bypassing reunification efforts with a parent at the disposition stage simply were not met. *Id.* at 335-41 (McDonald, J., dissenting). The dissent concluded that "[t]he majority ignores the statutory

6

requirement that the child be subjected to the aggravated circumstances shown, and the youth

court in this case did not either and strained to connect the two." *Id.* at 339-40.

¶16.    Malone petitioned this Court for certiorari, which we granted. M.R.A.P. 17. Malone

argues (1) that the Court of Appeals applied the incorrect standard of review and should have

employed a de novo standard of review to the statutory interpretation issue; (2) that the youth

court and Court of Appeals incorrectly applied Section 43-21-603(7)(c); and (3) that the

evidence the youth court relied upon was inadmissible, and thus it was inappropriate to base

its order on such evidence.  On certiorari, we limit our review in this case to the standard of

review and the interpretation of Section 43-21-603(7)(c).  M.R.A.P. 17(h).

## ANALYSIS

### 1.    Standard of Review

¶17.    The Court of Appeals applied an extremely deferential standard of review to this case,

stating in the entirety:

> "Our standard of review in youth court cases is limited." *Kevin v. Miss. Dep't of Child Prot. Servs.*, 341 So. 3d 1014, 1018 (¶ 9) (Miss. Ct. App. 2022). "The youth court judge sits as the trier of fact." *Id.* This Court will only reverse a youth court's findings "if reasonable men could not have found as the youth court did by a preponderance of the evidence[.]" *In re S.A.M.*, 826 So. 2d 1266, 1274 (¶ 17) (Miss. 2002).

*In re Int. of A.R.H.*, 412 So. 3d at 331 (alteration in original).  While this Court is generally

deferential to a youth court's findings of fact, this is clearly an issue of statutory

interpretation, and "[s]tatutory interpretation, of course, is a matter of law."  *King v. Miss.*

*Dep't of Child Prot. Servs. (In re Int. of E.K.)*, 249 So. 3d 377, 381 (Miss. 2018) (citing *5K*

*Farms, Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221, 225 (Miss. 2012)).  This Court

7

reviews such matters of law under a de novo standard of review. ***Id.*** Thus, the Court of

Appeals should have, and we do, review de novo the youth court's interpretation of Section

43-21-603(7)(c).

### 2.     *Aggravating Circumstances in Section 43-21-603(7)(c)*

¶18.    Section 43-21-603(7)(c) instructs the youth court regarding the standards of a

disposition hearing.[4]   In order to bypass unification at the disposition stage, the statute

provides that

> (c) Reasonable efforts to maintain the child within his home shall not be required if the court determines that:
>
> (i) The parent has subjected the child to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse and sexual abuse; or
>
> (ii) The parent has been convicted of murder of another child of that parent, voluntary manslaughter of another child of that parent, aided or abetted, attempted, conspired or solicited to commit that murder or voluntary manslaughter, or a felony assault that results in the serious bodily injury to the surviving child or another child of that parent; or
>
> (iii) The parental rights of the parent to a sibling have been terminated involuntarily; and
>
> (iv) That the effect of the continuation of the child's residence within his own home would be contrary to the welfare of the child and that placement of the child in foster care is in the best interests of the child.

Miss. Code Ann. § 43-21-603(7)(c) (Rev. 2023).   The statute is clear that to bypass

---

[4]As the Court of Appeals' dissent points out, the analysis of when bypassing parental reunification is appropriate at the *disposition stage* is quite different than the criteria and proof needed to terminate parental rights, which are provided by an entirely different statute. ***In re Int. of A.R.H.***, 412 So. 3d at 337 (McDonald, J., dissenting).

reunification at the disposition stage under subsection (c), either subsections (i), (ii), *or* (iii) must be met, *and* subsection (iv) must also be met.[5]  Thus, after determining that one of the first three criteria have been met, the youth court must also determine that bypassing reunification is in the best interests of the child.  The youth court found that Malone fit the standards under subsections (i) and (iv), finding that his criminal history constituted aggravated circumstances under (i) and that it was not in the best interests of the child to reunify the child with Malone.[6]

¶19.    The Court of Appeals found that the list of aggravated circumstances in Section 43-21-603(7)(c)(i) is not exhaustive and that Malone's extensive criminal history thus constitutes aggravated circumstances.  ***In re Int. of A.R.H.***, 412 So. 3d at 333.  The Court of Appeals relied on ***C.P. v. Lowndes County Department of Child Protection Services***, 349

---

[5]Notably, Mississippi Code Section 43-21-603(7)(a)(ii)-(b) provides another method for bypassing reasonable efforts at reunification at the disposition stage.  Reasonable efforts at reunification may be bypassed if the youth court finds that

> (ii) The circumstances are of such an emergency nature that no reasonable efforts have been made to maintain the child within his own home, and that there is no reasonable alternative to custody; and

> (b) That the effect of the continuation of the child's residence in his own home would be contrary to the welfare of the child and that the placement of the child in foster care is in the best interests of the child[.]

Miss. Code Ann. § 43-21-603(7)(a)(ii)-(b) (Rev. 2023).  While it is the province of the youth court, not this Court, to determine whether other provisions of the statute are applicable, the youth court could conceivably consider these provisions on remand.

[6]Subsection (ii) is clearly not met because none of Malone's crimes were perpetrated against children, and subsection (iii) is clearly not met because A.R.H. is Malone's only child.

9

So. 3d 1209 (Miss. Ct. App. 2022), to support its holding. In **C.P.**, the child's mother had severe intellectual disabilities, and while the court agreed that this was not in the same category with abandonment, torture, or chronic abuse, it held that "the statute is not an exhaustive list of aggravated circumstances, hence the words 'including, but not limited to.'" **C.P.**, 349 So. 3d at 1222. **C.P.** is certainly correct that the list of aggravated circumstances is not exhaustive. But what is unequivocal from the plain reading of the statute is that the parent must have *subjected the child* to some sort of aggravating circumstances. Malone was imprisoned when A.R.H. was born. He has not subjected A.R.H. to his criminal history; indeed, A.R.H. was not even born at the time any of the acts that form the basis of Malone's crimes occurred, so Malone could not have possibly subjected him to his criminal history.[7]

¶20.    "We must follow the text of the statute when it is clear and unambiguous. It is not this Court's duty to change statutory language where it sees fit, but only to interpret the language provided by the Legislature." **Chandler v. McKee**, 202 So. 3d 1269, 1274 (Miss. 2016) (citing **Stockstill v. State**, 854 So. 2d 1017, 1022023 (Miss. 2003)). The plain language of Section 43-21-603(7)(c)(i) is clear and unequivocal: to bypass parental reunification at the disposition stage under subsection (c), the parent must have subjected the child to the

---

[7]The dissent stretches the meaning of the "subjected the child to" language in the statute. It attempts to argue that Malone "subjected A.R.H. to life without a parent" while simultaneously claiming that the dissent would not apply to all parents in jail. Dis. Op. ¶ 28. These two concepts conflict: if being in jail for a certain period of time automatically amounts to subjecting a child to the aggravating circumstance of life without a parent, the dissent would apply to most parents in jail across the board. Furthermore, the dissent does not articulate any reason why considering the other statutory provisions for bypassing reunification, instead of the statutory provision that by its plain language does not apply, in any way harms A.R.H.'s best interests.

aggravated circumstances. The evidence here is also clear and unequivocal: Malone never subjected A.R.H. to the aggravated circumstances that the youth court found, consisting of his violent criminal history. A.R.H. was not born during the commission of any of Malone's crimes. Malone did not subject A.R.H. to the aggravated circumstances found by the youth court, and subjecting the child to the aggravated circumstances is plainly required by the statute. Thus, the youth court erred by finding that Malone's criminal history in this case was a basis for bypassing parental reunification under subsection (c) at this juncture in the proceedings, the disposition phase.

## **CONCLUSION**

¶21. Because the youth court went beyond the plain language of subsection (c) of the statute in bypassing parental reunification between A.R.H. and Malone at the disposition stage of proceedings, this Court reverses the judgments of the youth court and of the Court of Appeals, and remands this case to the youth court for further proceedings consistent with this opinion.

¶22. **REVERSED AND REMANDED.**

**COLEMAN, P.J., GRIFFIS AND SULLIVAN, JJ., CONCUR. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ISHEE AND BRANNING, JJ.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶23. The majority applies a *de novo* standard of review to the decision of the youth court even though the Court of Appeals used the proper standard and affirmed the youth court's decision that Malone's violent criminal history foreclosed reasonable efforts for reunification

11

of A.R.H. with Malone. Only by using a *de novo* standard of review does the majority arrive at its decision. When utilizing the laws of this state, including precedent and statutes, courts must always examine the *best interests of the child* as the youth court did for A.R.H. Using the appropriate standard, the evidence in this case supports the youth court's decision as to the *best interests of the child*, and I respectfully dissent.

¶24. This Court has consistently applied a limited standard of review when analyzing a youth court decision. In ***R.W. v. Mississippi Department of Child Protection Services***, this Court stated the standard:

> The youth court judge is the trier of fact. When challenging a youth court's adjudicatory or dispositional order for sufficiency of the evidence, the standard of review is preponderance of the evidence. This Court considers all the evidence in the light most favorable to the State. Further, "[i]f the evidence is such that, beyond a reasonable doubt, reasonable [minds] could not have reached the youth court's conclusion, we must reverse. However, if the evidence in the record supports the youth court's adjudication, considering the reasonable-double standard, then we must affirm."

***R.W. v. Miss. Dep't of Child Prot. Servs.***, 395 So. 3d 63, 68 (Miss. 2024) (alterations in original) (citations omitted). Thus, this Court must affirm the youth court's decision if the evidence in the record supports it. ***Id.***

¶25. Furthermore, this Court has consistently held that "the polestar consideration in determining disposition is the *best interest of the child*." ***In re Int. of S.A.M.***, 826 So. 2d 1266, 1275 (Miss. 2002) (emphasis added) (citing ***G.Q.A. v. Harrison Cnty. Dep't of Hum. Servs.***, 771 So. 2d 331, 336 (Miss. 2000)). At the disposition stage, "[t]he paramount concern . . . is the *best interest of the child*, not reunification of the family." ***Id.*** at 1274-75 (emphasis added) (citing ***Prante v. Beggiani (Pet. of Beggiani)***, 519 So. 2d 1208, 1213 (Miss. 1988)).

12

The *best interest of the child* is unequivocally the most important consideration for all courts when the safety and well-being of children are at issue. *Id.*

¶26. Mississippi Code Section 43-21-603(7)(c) relates to bypassing reasonable efforts by a youth court:

> (c) Reasonable efforts to maintain the child within his home shall not be required if the court determines that:
>
> (i) The parent has subjected the child to aggravated circumstances, *including, but not limited to*, abandonment, torture, chronic abuse and sexual abuse; or
>
> (ii) The parent has been convicted of murder of another child of that parent, voluntary manslaughter of another child of that parent, aided or abetted, attempted, conspired or solicited to commit that murder or voluntary manslaughter, or a felony assault that results in the serious bodily injury to the surviving child or another child of that parent; or
>
> (iii) The parental rights of the parents to a sibling have been terminated involuntarily; and
>
> (iv) That the effect of the continuation of the child's residence within his own home would be contrary to the welfare of the child and that placement of the child in foster care is in *the best interests of the child.*

Miss. Code Ann. § 43-21-603(7)(c) (Rev. 2023) (emphasis added). The majority's ruling ignores the words of the statute.

¶27. The statute clearly provides in subsection 7(c)(i), *inter alia*, a list of nonexhaustive aggravated circumstances as the "including, but not limited to" language indicates. *Id.* A dictionary definition of *aggravate* means "to make (something) worse, more serious, or more severe: to intensify (something) unpleasantly[.]" *Aggravate*, Merriam-Webster,

https://www.merriam-webster.com/dictionary/aggravate#dictionary-entry-1 (last visited Jun. 6, 2026). As such, "aggravated circumstances" can include more than just "abandonment, torture, chronic abuse and sexual abuse[.]" § 43-21-603(7)(c). Finally, the statute specifically requires the youth court to consider the *best interests of the child* just as our case law also mandates. *Id.*

¶28.    In the case *sub judice*, the evidence in the record supports the youth court's decision. The order of the youth court reveals a potpourri of Malone's run-ins with law enforcement:

- In 1997, he was found guilty of domestic violence in California.

- In 2002, he was found guilty of possession of drug paraphernalia and forgery in California.

- In 2005, he was found guilty of voluntary manslaughter with use of a deadly weapon in Nevada.

- In 2013, he was found guilty of possession of drug paraphernalia.

- In 2014, he was found guilty of possession of a crack pipe.

- In 2015, he was found guilty of two separate instances of possession of a crack pipe and one instance of disorderly conduct for failure to comply with law enforcement.

- In 2016, he was found guilty of possession of a crack pipe.

- In 2020, he overdosed on heroin.

- In 2020, he was charged with disorderly conduct and resisting arrest.

- In 2021, he was found guilty of simple possession of marijuana and a glass pipe with white residue.

- In 2021, he was indicted for aggravated assault with a deadly weapon. He was out on bond, which was revoked when he was subsequently charged with domestic violence. He remains at the Jackson County

Adult Detention Center awaiting trial. [Malone later pled guilty to the aggravated-assault charge.].

- In 2022, he was found guilty of domestic violence, public drunk and resisting arrest.

- In 2022, he was also charged with three separate counts of domestic violence.

- On[sic] 2023, he appeared in court with a black eye as a result of a fight at the ADC.

Malone later pled guilty to the aggravated-assault charge, and he will remain incarcerated for this crime until 2034. Due to his incarceration, he has not had the ability to care for A.R.H. or foster a relationship with his child. His sentence will make either of those impossible for the foreseeable future. Ultimately, he has subjected A.R.H. to life without a parent, and reunification would further create a risk to A.R.H. that the youth court determined would prove contrary to the child's best interests. As shown by the record, Malone has made A.R.H.'s circumstances "worse, more serious, or more severe," which falls under Section 43-21-603(7)(c)(i) of the disposition statute as an aggravated circumstance. *Aggravate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/aggravate#dictionary-entry-1 (last visited Jun. 6, 2026). The youth court, thus, properly found aggravated circumstances that warrant bypassing reasonable efforts at reunification. Since the record supports the youth court's decision, I would affirm the decisions of the youth court and of the Court of Appeals.

¶29. To clarify, this opinion should not be read to say that a criminal record automatically means that a youth court should bypass reasonable efforts at reunification; a conviction or criminal record is not a reason, in and of itself, to bypass reasonable efforts. However, a

15

youth court should consider an extensive criminal record and all other relevant circumstances at the disposition stage to determine what is in the *best interests of that child*. The youth court did so here.

¶30. The youth court determined that Malone's criminal history and resulting absence from A.R.H.'s life amounted to aggravated circumstances under the statute. Given that the record includes Malone's criminal history and that the youth court properly considered the best interests of A.R.H., I would affirm the decisions of the youth court and of the Court of Appeals under the reasonable-doubt standard. Therefore, I respectfully dissent.

**ISHEE AND BRANNING, JJ., JOIN THIS OPINION.**